Karen Sue MORRIS, Petitioner–Appellant,

v.

STATE OF CALIFORNIA; Ventura County Municipal Court; Attorney General of the State of California, Respondents–Appellees.

No. 90–56095.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 1, 1991.

Decided Sept. 30, 1991.

As Amended on Denial of Rehearing and Rehearing En Banc March 10, 1992.

See also 242 Cal.Rptr. 466.

Scott Howard Siegel, Office of General Counsel, Sec. Pacific Nat. Bank, Los Angeles, Cal., for petitioner-appellant.

Michael D. Bradbury, Dist. Atty., County of Ventura, Michael D. Schwartz, Deputy Dist. Atty., Ventura, Cal., for respondents-appellees.

Before: CHAMBERS, Senior Circuit Judge, SCHROEDER and REINHARDT, Circuit Judges.

### ORDER

The panel has voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc. The full court has been advised of the suggestion for rehearing en banc, and no judge of the court has requested a vote on the suggestion for rehearing en banc. Fed.R.App.P. 35.

Appellees' petition for rehearing is denied and the suggestion for rehearing en banc is rejected. The third paragraph of Part II of the opinion filed September 30, 1991, 945 F.2d 1456, 1460 (9th Cir.1991), is deleted and the following is substituted in its place:

### OPINION

REINHARDT, Circuit Judge:

Appellant Karen Sue Morris appeals the district court's denial of her petition for a writ of habeas corpus. In September 1985, Ms. Morris was convicted by a Ventura County Municipal Court jury on one count of being under the influence of cocaine in violation of California Health & Safety Code § 11550(a). She challenges this conviction on the ground that she received ineffective assistance of counsel. The district court had jurisdiction pursuant to 28 U.S.C. § 2254. We have jurisdiction over

this appeal pursuant to 28 U.S.C. § 2253. We reverse and remand to the district court for further proceedings consistent with this opinion, although we affirm certain of the findings and conclusions below.

## I. FACTS

At 2:00 a.m. on April 14, 1985, Karen Sue Morris and her husband James were driving on one of Southern California's many freeways when their car malfunctioned. Mr. Morris drove off the freeway and turned into a closed gas station to use a pay phone to summon help. Deputy De Los Santos of the Ventura County Sheriff's Department was sitting in a patrol car nearby. While Mr. Morris was using the telephone, Ms. Morris walked over to Deputy De Los Santos to find out where they were. In the course of his conversation with her, Deputy De Los Santos, who was a former narcotics investigator, began to suspect that Ms. Morris was under the influence of cocaine.

Deputy De Los Santos asked Ms. Morris a number of questions, took her pulse rate, and measured her pupil size. Ms. Morris's pulse rate was rapid, she spoke nervously and quickly, and her pupils were "extremely" dilated and did not constrict when Deputy De Los Santos flashed light on them with a medical penlight. Deputy De Los Santos also examined Ms. Morris's nostrils; one was clear but the other was "extremely" irritated and inflamed. He found no cocaine residue in her nostrils, nor did he find cocaine or cocaine paraphernalia on her person or in her car.

Based on his belief that Ms. Morris was under the influence of cocaine, Deputy De Los Santos arrested her and brought her to the sheriff's substation. There, she refused to provide a urine sample for chemical analysis. Deputy De Los Santos then repeated his check of her symptoms. Her pulse rate remained high, her pupils remained dilated, and at one point he noted that her respiration was rapid. Deputy De Los Santos later testified that there was no doubt in his mind that Ms. Morris was under the influence of cocaine.

Ms. Morris was charged by way of Municipal Court complaint with a single count of being under the influence of cocaine in violation of California Health & Safety Code § 11550(a). She was convicted by a jury and sentenced to 90 days in the County Jail and 36 months summary probation. Her sentence was suspended pending her appeal.

After she exhausted her state remedies, Ms. Morris filed the instant petition for a writ of habeas corpus. She asserted that her conviction was unconstitutional because she was the victim of ineffective assistance of counsel. She argued that her trial counsel was ineffective in three ways.

First, Ms. Morris asserted that her attorney failed to recognize and advise her of a crucial defense—that she was under the influence of methamphetamine and not cocaine at the time of her arrest. Ms. Morris alleged that she informed her trial counsel that she had ingested methamphetamine—and not cocaine—before her arrest. She further alleged that her trial counsel told her that being under the influence of methamphetamine was "just as bad as" being under the influence of cocaine, and that because it was incriminating, he advised her not to admit to methamphetamine use when offering her defense to the charge of cocaine use. In fact, at the time Ms. Morris was arrested and charged, being under the influence of methamphetamine was not illegal in California. Ms. Morris argues that at the very least her counsel had the obligation to research the question before giving her such critically important erroneous legal advice.

Second, Ms. Morris alleged that her trial counsel had a conflict of interest due to his concurrent representation of her husband in an unrelated criminal case involving narcotics. She argued that counsel's failure to call Mr. Morris to the stand to testify on her behalf was a product of this conflict and that she was prejudiced by her husband's failure to testify.

Finally, Ms. Morris alleged that her attorney provided ineffective assistance by failing to object to questions at trial regarding her prior cocaine use. His failure

to object, she argued, resulted in the admission of inadmissible character evidence against her.

The U.S. Magistrate assigned to her case recommended that the district court reject Ms. Morris's first two arguments but grant a writ of habeas corpus based on the failure of her attorney to object to the admission of evidence of bad character. The district court agreed with the Magistrate that Ms. Morris's first two arguments should be rejected, but disagreed that trial counsel's failure to object to the admission of evidence constituted ineffective assistance. Accordingly, the district court denied the writ. Ms. Morris appeals.

## II. DISCUSSION

### A. Methamphetamine Defense.

Ms. Morris argues that her trial counsel was ineffective in failing to recognize the legality of her alleged use of methamphetamine prior to her arrest, and in advising her not to disclose the methamphetamine use in connection with her defense to the charge of cocaine use. At the least, she says, her counsel should have researched the question before effectively depriving her of her defense to the charge of which she was convicted. The district court rejected this argument on the ground of judicial estoppel. It based its ruling on Ms. Morris's testimony at trial that she had taken only three prescription drugs—Tylenol with codeine, Fiorinal,[1] and penicillin. The trial transcript reflects the following colloquy:

> Prosecutor: Then what you're saying is these symptoms [observed by Deputy De Los Santos] aren't due to amphetamines or some other drug you may have been taking that night? [Defense counsel's objection was overruled and Ms. Morris answered].
>
> Ms. Morris: I feel that my high pulse rate was attributed to being on the freeway and being scared to death and then being treated so unprofessionally by Deputy De Los Santos.

> P: Had you been drinking alcohol that night?
>
> M: No, I had not.
>
> P: Had you been smoking marijuana that night?
>
> M: No, I had not.
>
> *P: Had you been taking anything other than the medication that you've described already?*
>
> *M: All I had taken were the three prescriptions.*
>
> P: Okay. Tylenol with codeine, penicillin and the what?
>
> M: Fiorinal.
>
> P: Fiorinal. And that's it?
>
> M: That's correct.

Ms. Morris now states that she perjured herself at trial. The district court ruled that the doctrine of judicial estoppel precludes her from subsequently changing her story.

As a general principle, the doctrine of judicial estoppel bars a party from taking inconsistent positions in the same litigation. *See Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 716 (9th Cir.1990); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991); *In re Corey*, 892 F.2d 829, 836 (9th Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990); *Stevens Tech. Servs. v. SS Brooklyn*, 885 F.2d 584, 588 (9th Cir.1989). Although this circuit has adopted the doctrine of judicial estoppel, we have not yet determined the circumstances under which it will be applied. *See Milgard Tempering, Inc.*, 902 F.2d at 716; *Stevens Tech. Servs., Inc.*, 885 F.2d at 589. The majority of circuits recognizing the doctrine hold that it is inapplicable unless the inconsistent statement was actually adopted by the court in the earlier litigation; only in that situation, according to those circuits, is there a risk of inconsistent results and a threat to the integrity of the judicial process. *See Milgard Tempering, Inc.*, 902 F.2d at 716 (citing *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167 (4th Cir.1981); *Edwards v. Aetna Life Ins. Co.*, 690 F.2d

---

1. Fiorinal is a prescription medication taken for migraine headaches.

595, 598 (6th Cir.1982); *United States v. 49.01 Acres of Land*, 802 F.2d 387, 390 (10th Cir.1986); *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C.Cir.1980); *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir.1953)); *Stevens Tech. Servs., Inc.*, 885 F.2d at 588–89. The minority view, in contrast, holds that the doctrine applies even if the litigant was unsuccessful in asserting the inconsistent position, if by his change of position he is playing "fast and loose" with the court. *See Milgard Tempering, Inc.*, 902 F.2d at 716 (citing *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987)). In either case, the purpose of the doctrine is to protect the integrity of the judicial process. Accordingly, the doctrine of judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *Russell*, 893 F.2d at 1037 (quoting *Religious Tech. Center v. Scott*, 869 F.2d 1306, 1311 (9th Cir.1989) (Hall, J., dissenting)).

■ We need not decide in this case whether to adopt the majority or minority view regarding the applicability of the doctrine of judicial estoppel. In either instance, we would hold that Ms. Morris is not barred from asserting that she told her attorney she had ingested methamphetamine prior to her arrest. No circuit has ever applied the doctrine of judicial estoppel to bar a criminal defendant from asserting a claim based on innocence, either on direct appeal or on habeas corpus, and we will not do so now. As noted above, the doctrine of judicial estoppel serves the function of preserving the integrity of the judicial process. Where a defendant who claims to be innocent allegedly made untruthful statements solely because her attorney was ignorant of the law and told her incorrectly that telling the truth would constitute an admission of a crime, the integrity of the judicial process is best preserved by permitting the judiciary to consider her claim. Justice would not be served by holding the defendant to her prior false statements, because to do so would assign a higher value to the "sanctity of the oath" than to the guilt or innocence of the accused. Because the conviction of an innocent person as a result of her lawyer's incompetence constitutes one of the most serious infringements of the integrity of the judicial process, our concerns over compromising the "sanctity of the oath" must yield. The judicial process can more easily survive a rule that precludes the use of judicial estoppel to keep intact convictions of innocent persons than it can a rule that purports to preserve judicial sacrosanctity by leaving wrongful convictions in place as a sanction for lying. The state is free to prosecute Ms. Morris for perjury if it so desires. However, we decline to adopt a rule that would permit her to be punished twice. We hold that the doctrine of judicial estoppel may not be invoked where its use would serve to keep a conviction in effect regardless of the innocence or guilt of the defendant.

■ Judicial estoppel cannot constitute an independent and adequate state ground on which to uphold Ms. Morris's conviction. The Supreme Court has made it clear that federal habeas relief is not barred by an otherwise independent and adequate state ground when "a constitutional violation has probably resulted in the conviction of one who is actually innocent". *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2650, 91 L.Ed.2d 397 (1986). Ms. Morris asserts that had she received effective assistance of counsel, she would have asserted facts that would have demonstrated her innocence. If true, a matter to be determined by the district court on remand, then a constitutional violation—specifically, of her right to effective assistance of counsel—would have probably resulted in the conviction of one who is actually innocent. As *Carrier* makes clear, such a conviction cannot stand. Moreover, a defendant may not default a constitutional claim through conduct that occurs as a result of the constitutional violation. *See, e.g., Coleman v. Thompson*, —— U.S. ——, 111 S.Ct. 2546, 2567, 115 L.Ed.2d 640 (1991) ("Where a petitioner defaults a claim as a result of the denial of the right to effective assistance of counsel, the State, which is responsible for the denial as a constitutional matter, must bear the cost of any resulting default and the harm to state interests that

federal habeas review entails."); *Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645. According to Ms. Morris, but for the ineffectiveness of her counsel, she would not have testified falsely. Viewed in that light, her testimony is a direct result of her counsel's incompetence. If Ms. Morris's contentions are correct, her testimony could not be used to bar her from asserting her Sixth Amendment right to effectiveness of counsel. Accordingly, we proceed to consider the merits of Ms. Morris's claim.

In support of her allegation that her attorney misinformed her as to the legality of methamphetamine use, Ms. Morris introduced two declarations—her own, and that of her trial counsel. In her declaration, she stated that she had ingested methamphetamine prior to her arrest, and that she had not ingested cocaine. She said that she had informed her trial counsel of that fact, and that he had told her "that being charged with being under the influence of methamphetamines was the equivalent to being charged with being under the influence of 'cocaine.'" The declaration of Ms. Morris's trial counsel makes identical representations. It states: "During the time that I represented both appellant and her husband, they both advised me that appellant was under the influence of methamphetamine and Tylenol with codeine at the time of her arrest in the within action. They both denied the allegation that she was under the influence of cocaine at the time of her arrest. These representations were made to me both before, during and after appellants [sic] trial in the within action.... I was of the opinion that being under the influence of methamphetamine or cocaine were each respectively, a viola-

tion of Health and Safety Code Section 11550. However, at no time prior to or during appellant's trial did I confirm that being under the influence of methamphetamine was described, or included in, or proscribed by Health and Safety Code Section 11550.[2] ... I advised the appellant that since it was an offense to be under the influence of methamphetamine (even though it was not) she should not offer it as a defense to the charges of under the influence of cocaine."

 In order to demonstrate ineffective assistance of counsel, Ms. Morris must show, first, that counsel's performance was "deficient," and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Deficient performance requires "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* Ms. Morris's allegations, if proven, would satisfy that two-part test.

First, assuming that the declarations are true, the performance of Ms. Morris's trial counsel was clearly deficient. Once she informed her attorney that she had been under the influence of methamphetamine, and not cocaine, he should have investigated and discovered that being under the influence of methamphetamine was not illegal at the time.[3] Additionally, his advice to her that methamphetamine use and cocaine use were equally incriminating was

**2.** From the context of the statement it is clear that by saying that he did not "confirm" his opinion, counsel meant that he did not independently verify it. His statement clearly does not mean, as it might in some other context, that he did not confirm his initial view to his client a second time.

**3.** Even if being under the influence of methamphetamine had been a crime at the time Ms. Morris was arrested, she was not charged with that crime. Counsel for the State of California admitted at oral argument that it was extremely unlikely that a trial court would have allowed

amendments to the complaint after the trial had already started because of the risk of violating the defendant's right to notice of the charges against her. Further, once tried on the charge of being under the influence of cocaine on the occasion in question, Ms. Morris could not have been tried again for the same act on different charges. This would have constituted double jeopardy. Thus, regardless of the legality or illegality of methamphetamine use, counsel's advice that Ms. Morris not raise her methamphetamine use as a defense to the charge of cocaine use was unquestionably seriously deficient.

far below any "objective standard of reasonableness." *See id.* at 688, 104 S.Ct. at 2064.

Second, if Ms. Morris's counsel had either been familiar with the law or done his homework and discovered that being under the influence of methamphetamine was not illegal, there is a reasonable probability that the outcome of the trial would have been different. Certainly, had counsel not been "deficient" in the performance of his duties, he would have directed Ms. Morris to testify fully as to the drugs she had ingested prior to her arrest. Then he could have presented expert testimony showing that the effects of methamphetamine use are nearly identical to those of cocaine use. Combined with the complete absence of any physical evidence showing cocaine use, this could well have raised a reasonable doubt in the jury's mind as to Ms. Morris's guilt. If the allegations set forth in the affidavits submitted by Ms. Morris are true, a court could not have confidence that the jury would have reached the result it did nor that the result is a reliable one. Thus, if the facts are as Ms. Morris asserts, she has established ineffective assistance of counsel under *Strickland.*

Because the district court ruled that Ms. Morris was estopped from asserting that she had been under the influence of methamphetamine, it never inquired into the veracity of her allegations. We therefore remand for the district court to conduct an evidentiary hearing on the methamphetamine issue.

## B. *Conflict of Interest.*

Ms. Morris next argues that her trial counsel had a conflict of interest because he was simultaneously defending her husband in an unrelated narcotics prosecution. Because of that conflict, she argues, her attorney decided not to call Mr. Morris to testify on her behalf. The result, she claims, was ineffective assistance of counsel.

■ Ms. Morris raised no objection at trial to her counsel's concurrent representation of her husband and herself. Therefore, in order to establish a Sixth Amendment violation based on a conflict of interest, she must show: (1) that her trial counsel actively represented conflicting interests, and (2) that an actual conflict of interest adversely affected his performance. *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980); *Manhalt v. Reed,* 847 F.2d 576, 579 (9th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 249 (1988).

■ Ms. Morris cannot satisfy her burden. The mere possibility of a conflict of interest is insufficient to support a holding of ineffective assistance. Rather, "a defendant who raised no objection at trial must demonstrate that an *actual* conflict of interest adversely affected his lawyer's performance." *Id.* (emphasis added). An actual conflict must be proved through a factual showing on the record. *Willis v. United States,* 614 F.2d 1200, 1203 (9th Cir.1979). As we have explained, "while we cannot indulge in nice calculations about the amount of prejudice which results from a conflict of interest ... neither can we create a conflict of interest out of mere conjecture as to what might have been shown." *Id.* (quoting *Lugo v. United States,* 350 F.2d 858, 859 (9th Cir.1965); citing *Carlson v. Nelson,* 443 F.2d 21, 22 (9th Cir.1971)).

■ Ms. Morris's bare allegation of a conflict of interest is insufficient to entitle her to an evidentiary hearing on the question. In order to establish an actual conflict of interest she would have had to introduce, at a minimum, an affidavit from her husband disclosing what he would have said at her trial had he testified. She has introduced no evidence demonstrating that her husband's testimony might have been helpful to her, and that her attorney therefore faced a conflict of interest in determining whether to call him as a witness.[4] Al-

---

**4.** Ms. Morris's counsel's affidavit did state that Mr. Morris told him that the defendant was under the influence of methamphetamine and not cocaine. However, it is clear that counsel would not have asked the husband to testify to that fact in any event because he thought that such testimony would be legally unavailing.

though her brief on appeal is heavy with speculation as to the contents of his unsolicited testimony, her wishful suggestions cannot substitute for declaratory or other evidence. In the absence of any record evidence as to the existence of an actual conflict of interest, the district court was correct to reject her claim that such a conflict existed. *See Willis,* 614 F.2d at 1203.

▆ Under the circumstances of this case, including our conclusion that Ms. Morris's trial counsel faced no actual conflict of interest, counsel's decision not to call Mr. Morris as a witness provides no basis for a claim of ineffective assistance. At a bench conference, counsel explained his decision not to call Mr. Morris as follows:

> He [James Morris] has pending matters of his own and I feel that to put Mr. Morris on the stand would do precisely what [opposing] Counsel wishes it would do and that would open the door to other matters which are irrelevant to this proceeding but would be highly prejudicial to the defendant in this case.

That explanation, viewed in the context of his motion in limine to exclude evidence of a prior arrest of Mr. and Ms. Morris,[5] demonstrates that counsel's decision not to call Mr. Morris was a tactical one; had he called Mr. Morris, the prosecution could possibly have linked him, and thereby Ms. Morris, to prior involvement with cocaine. In this instance, "[d]efense counsel's conduct and trial strategy appear to fall within the wide range of reasonable professional representation," and cannot be considered ineffective assistance. *See United States v. Murray,* 751 F.2d 1528, 1535 (9th Cir.), *cert. denied,* 474 U.S. 979, 106 S.Ct. 381, 88 L.Ed.2d 335 (1985); *see also United States v. Gwaltney,* 790 F.2d 1378, 1386 (9th Cir. 1986), *cert. denied,* 479 U.S. 1104, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987).

*C. Failure to Object to Admission of Evidence of Past Cocaine Use.*

During Ms. Morris's cross-examination, the prosecutor asked her if she had ever used cocaine. Her trial counsel did not object. Ms. Morris answered that she had used cocaine once at a party six years earlier, when she was in high school, but that she had never seen or used cocaine since then. She asserts that her trial counsel's failure to object to the prosecutor's questions resulted in the admission of inadmissible and prejudicial character evidence against her. For purposes of discussion, we assume that the evidence was, in fact, inadmissible.

▆ An attorney's failure to object to the admission of inadmissible evidence is not necessarily ineffective. As noted above, in order to establish ineffective assistance of counsel, a defendant must show that counsel committed "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. A defendant seeking to prove ineffective assistance of counsel "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

▆ Ms. Morris fails to overcome the presumption regarding sound trial strategy. Under the circumstances of her case, an effective advocate could have reasonably decided not to object to the prosecutor's questions. Ms. Morris's admission to a single instance of cocaine use six years earlier, when she was in high school, might well have bolstered her credibility with the jury and helped persuade it that she was not under the influence of cocaine on the night in question. Even if that turned out not to be the case, a tactical decision not to object would have been reasonable at the time it was made. We need not determine the actual explanation for trial counsel's failure to object, so long as his failure to do so falls within the range of reasonable rep-

---

5. The motion was granted without prejudice to allowing the evidence later for purposes of impeachment.

resentation. *See United States v. Molina*, 934 F.2d 1440 (9th Cir.1991). Here, it clearly does. Accordingly, his failure to object did not render his representation ineffective.

### III. CONCLUSION

Our holding that Ms. Morris is not judicially estopped from asserting that she was under the influence of methamphetamine rather than cocaine at the time of her arrest requires us to reverse the district court's denial of her habeas corpus petition and remand for an evidentiary hearing regarding that issue. We affirm the court's findings and conclusions as to the two other issues.

REVERSED AND REMANDED; FINDINGS AND CONCLUSIONS AS TO CERTAIN ISSUES AFFIRMED.