Andrea C. ARRIAGA, on behalf of herself and all others similarly situated, and on behalf of the General Public, Plaintiff,

v.

CROSS COUNTRY BANK and Applied Card Systems, Incorporated, Defendants.

No. 01 0498 IEG (RBB).

United States District Court, S.D. California.

July 5, 2001.

## ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

GONZALEZ, District Judge.

Presently before the Court is a motion to compel arbitration and stay the action pending arbitration by defendants Cross Country Bank and Applied Card Systems, Inc. (collectively the "defendants"). For the reasons discussed below, the Court grants defendants' motion to compel arbitration on all claims and stays the action pending arbitration.

## BACKGROUND

On March 21, 2001, plaintiff Andrea Arriaga ("Arriaga") initiated this class action on behalf of herself and similarly situated individuals against defendants Cross Country Bank ("CCB") and Applied Card Systems, Incorporated ("ACS"). Arriaga claims that defendants violated the Truth in Lending Act (TILA), 15 U.S.C. §§ 1632, 1637, the Consumer Legal Remedies Act (CLRA), California Civil Code § 1750, and California Business and Professions Code § 17200, as well as engaged in fraud and breach of contract. All claims relate to her CCB credit card account maintained by CCB and ACS collectively. (See Compl. at ¶ 17.)

Arriaga alleges that in the summer of 1999 she received a mailer encouraging her to accept a Cross Country credit card as a way to establish good credit. In response to this mailer, Arriaga submitted an application for an account with CCB. Arriaga claims that on July 6, 1999, before she ever received her credit card or the Credit Card Agreement (hereinafter, "the Agreement"), CCB charged her $150 in up-front fees without her knowledge, representing almost half of her available credit limit. Later in July, Arriaga received her credit card and the Agreement containing the arbitration clause, to which she consented according to its terms.[1] Approximately one month later, Arriaga as-

---

1. The Agreement provided that it became "effective when you (or someone you authorize) sign the credit card ... or obtain the first Cash Advance or Purchase on your Account."

Plaintiff does not contend that she did not receive the credit card Agreement or make purchases on her account.

serts that CCB, again without her knowledge or consent, debited her account in the amount of $34.95 for an "Applied Advantage" membership program.[2] Finally, Arriaga claims that defendants purposefully failed to send monthly billing statements, forcing her and other customers to request one at a charge of $3 to their credit accounts. All of this, plaintiff contends, is part of a fraudulent scheme to force CCB customers to exceed their credit limits, triggering a $27 "over limit" fee and potential late fees.[3]

On April 9, 2001 defendants filed the present motion to compel arbitration and stay proceedings pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 3. The arbitration clause defendants wish to enforce is contained in the Agreement and reads in relevant part:

> **Arbitration.** You and we agree that all claims, demands or disputes that you may have against us or that we may have against you which in any way relate to or arise out of this Agreement, your Account, or your use or attempted use of the Card ... shall be brought in arbitration before the National Arbitration Forum ("NAF").

Arriaga opposes the motion, arguing (1) that the arbitration clause in the Agreement does not cover her claims, (2) that the arbitration clause is invalid, (3) that the arbitration clause is inapplicable to some of her claims, and (4) that the defendants do not and/or should not have the ability to compel arbitration.

## DISCUSSION

### A. Applicable Law: Arbitration and Stay Pursuant to the FAA

The enforceability of arbitration agreements in contracts involving interstate commerce are governed by the FAA.[4] *See* 9 U.S.C. § 1, *et seq.; Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24–26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The FAA provides that:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof...., shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA represents a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), *quoted in Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Accordingly, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone,* 460 U.S. at 24, 103 S.Ct. 927, quoted in *Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647.

Additionally, the FAA provides that an agreement to arbitrate will take precedence over a suit in federal court involving the same subject matter. Indeed, the Su-

---

**2.** The Court notes that the "Applied Advantage" program is promoted by ACS for CCB credit card holders and, furthermore, that Arriaga has repeatedly attempted to have this fee refunded, to no avail.

**3.** For the purposes of this motion, defendants have accepted the truth of the averments con-

tained in the complaint. (*See* Defs.' Mot. to Compel Arbitration ("Defs.' Mot.") at 6.)

**4.** The parties do not dispute that their contract containing the arbitration provision did involve interstate commerce and is governed by the FAA.

preme Court has held that where applicable, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that the district court shall direct the parties to proceed to arbitration." *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). If a suit is proceeding in federal court, the party seeking arbitration may move the district court to compel the party resisting arbitration to submit to arbitration. *See* 9 U.S.C. § 4. A party to a lawsuit pending in federal court may also request that the action be stayed pending arbitration of the issues. *See* 9 U.S.C. § 3; *Wagner v. Stratton Oakmont, Inc.,* 83 F.3d 1046, 1048 (9th Cir. 1996).[5]

## B. Analysis

As stated above, Arriaga opposes this motion to compel arbitration on several grounds. The Court will address each of these arguments in turn.

### 1. Scope of the Arbitration Clause

■ Arriaga first contends that some of her claims arose out of events that occurred *before* she had signed any agreement to arbitrate (the initial $150 in charges on her account), and thus those claims are not arbitrable under the Agreement. Indeed, although there is a strong federal policy favoring arbitration that this court must uphold (*see Moses H. Cone,* 460 U.S. at 24, 103 S.Ct. 927), "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. War-*

*rior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Moreover, "before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.,* 925 F.2d 1136, 1141 (9th Cir.1991).

Keeping these considerations in mind, the Court disagrees that the arbitration clause does not reach Arriaga's claims even those that arise out of events that took place before she signed the Agreement. "An order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Food & Commercial Workers Union, Local 770 v. Geldin Meat Co.,* 13 F.3d 1365, 1368 (9th Cir.1994) (emphasis in original) (citing *United Steelworkers* at 582–83, 80 S.Ct. 1347). Plaintiff has not provided this Court with the kind of "positive assurance" that is required for her claims to be exempt from the arbitration clause.

The arbitration clause at issue here is susceptible of an interpretation which would cover all of Arriaga's claims. The clause applies to all claims which "*in any way relate to or arise out of* this Agreement, your Account, or your use or attempted use of the Card." (emphasis added). The fact that some of Arriaga's claims may stem from events that occurred before the arbitration clause took effect does not foreclose the possibility that those claims *relate to* the Agreement, and thus fall under the arbitration clause's broad scope.[6] The Supreme Court has

---

5. Although ACS is not a party to the arbitration agreement, the parties do not dispute that plaintiff's claims against it are also subject to arbitration since ACS is an agent of CCB (*see* Compl. at ¶ 17) as well as a third party beneficiary to the arbitration agreement (*see* Defs.' Mot. at 38).

6. A Florida district court came to the same conclusion, finding that defendants' arbitration clause covered claims that arose out of events that predated the clause itself. *See Cutshall v. Cross Country Bank and Applied Card Systems,* case No. 00–8670–CV–RYS-KAMP (S.D. Fla. April 5, 2001).

also addressed similar arbitration clauses and held that they cover claims based on events pre-dating the contract. *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (holding that arbitration clause extending to claims "relating to" underlying agreement covered claims for fraudulent inducement). Thus, in light of Supreme Court precedent interpreting arbitration clauses similar to the Agreement at hand, the Court cannot say with "positive assurance" that Arriaga's claims are not covered by the arbitration clause.

## 2. Validity of the Arbitration Clause

▆ Arriaga also contends that even if she did agree to arbitrate these claims, the arbitration clause is void because it was made by fraudulent inducement and it is unconscionable. "Generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 at 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). However, the Supreme Court has clearly held that on a motion to compel arbitration, a court cannot consider whether the contract as a whole is invalid. *See Prima Paint*, 388 U.S. 395, 403–404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (The FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally."); *see also Three Valleys Mun. Water Dist.*, 925 F.2d at 1139–40 (9th Cir. 1991) ("Though *Prima Paint* involved a charge of fraud in the inducement of the contract, the rationale of *Prima Paint* extends to attempts to rescind contracts on other grounds"). Therefore, instead of attacks that are applicable to the contract as

a whole, the Supreme Court demanded in *Prima Paint* that a plaintiff challenging the validity of an arbitration clause must direct his challenges specifically to the arbitration provision. Thus, Arriaga must show that the arbitration agreement *itself* was fraudulently induced or unconscionable. To the extent that her claims of fraudulent inducement and unconscionability apply to the contract generally, this Court may not hear them and must leave them for the arbitrator. *See Prima Paint*, 388 U.S. at 403, 87 S.Ct. 1801. For the purposes of this motion, the Court finds that the arbitration clause at issue is valid.

## (a) The Arbitration Clause is not Void for Fraudulent Inducement

·According to Arriaga, CCB engages in a fraudulent practice in which customers are faced with charges and obligations before they are even given the Agreement or consent to its terms. Thus, she claims, cardmembers are forced to agree with the terms that CCB offers in order to avoid poor credit reports. While this may be an unscrupulous practice, the Court nonetheless agrees with defendants that this allegation relates to the validity of the contract as a whole, and not to the making of the arbitration clause specifically.[7]

Arriaga further argues that "CCB should not be rewarded for its scheme and be allowed to use a belated arbitration provision as a shield to accountability for the wrongful initial fees and charges." (*See* Pl.'s Opp. at 10.) At best, this argument is akin to one previously rejected by the Second Circuit in *Campaniello Imports Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655 (2d Cir.1997). There, a party sought adjudication of its generally-appli-

---

7. *See* Compl. at ¶ 44 ("Cross Country knowingly conceals the true terms and conditions of its Cardmember Agreements from its Cardmembers until after charges are incurred and finance charges begin to accrue.") Thus, the fraud claim is applicable to the contract as a whole (the "Cardmember Agreements") and not to the arbitration clause specifically.  ʼ

cable fraud claim (prohibited by *Prima Paint*) by asserting that the arbitration provision was part of a general scheme to defraud. This allegation, however, does not change the result demanded by *Prima Paint*. The Second Circuit's reasoning on this issue is persuasive in that *Prima Paint* would be "eviscerated if a claimant could transform a general fraud claim into fraud in the inducement of the arbitration clause merely by stating that the arbitration clause is an element of the scheme to defraud." *Campaniello*, 117 F.3d at 667. Therefore, because Arriaga's fraudulent inducement claim applies as a defense to the contract generally, and not specifically against the arbitration clause itself, under the Supreme Court's holding in *Prima Paint* the Court cannot adjudicate this claim.

### (b) The Arbitration Clause is not Void for Unconscionability

██ Arriaga next argues that the arbitration clause is unconscionable and thus not enforceable, relying primarily on California case law to support her claim. As a preliminary matter, the court notes that California law applies to the present motion to compel arbitration. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (holding that enforceability of arbitration agreement subject to state contract law principles); 9 U.S.C. § 2 (conditioning validity of provisions in the FAA to defenses on "such grounds as exist at law or in equity for the revocation of any contract"). Under California law, for a contract term to be held unconscionable it must possess two elements: procedural unconscionability (meaning terms which are outside of the reasonable expectations of the parties) and substantive unconscionability (meaning terms that are overly harsh or one-sided). *See Armendariz v. Foundation Health Psychcare Servs.,* 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000). The arbitration clause at issue in this case contains neither of these elements.

Arriaga alleges that the arbitration agreement is procedurally unconscionable for three reasons: (1) that it was in a "take it or leave it" form, (2) that it was not mentioned in the credit card application and it was hidden in the fine print of the Agreement and (3) that the full terms of the arbitration agreement were not disclosed. The first two arguments are invalid for the same reason that this Court cannot consider Arriaga's fraudulent inducement claim. As stated previously, these claims must be deferred to the arbitrator because they challenge the validity of the contract generally and not the arbitration clause itself.

██ Although Arriaga's third argument (that the full terms of arbitration were not disclosed), does challenge the arbitration clause itself, that claim by itself does not make the arbitration agreement unconscionable. The fact that the full terms and rules of the National Arbitration Forum (the "NAF"), the forum where the parties agreed to resolve their disputes, were not given does necessarily mean that those rules are beyond a reasonable persons expectations. It is not unreasonable for a party to assume that by agreeing to submit their disputes to an arbitral forum, they might be unable to bring class actions or have other procedural options available in judicial forums. *See Cohen v. Wedbush, Noble, Cooke, Inc.,* 841 F.2d 282, 287 (9th Cir.1988) (holding that arbitration clause did not have to disclose that parties waived their right to a jury trial since this was a fairly obvious result of agreeing to submit disputes to an arbitral forum). Moreover, the Agreement clearly states the NAF's toll-free number and world wide web address from which Arriaga could have obtained the full terms and rules in question. Therefore, the specific rules and terms of

the arbitration clause were not agreed to in a procedurally unconscionable way.

■ Arriaga also alleges that the arbitration clause was substantively unconscionable because it is one-sided in favor of defendants. Arriaga premises her argument on the claim that the arbitration agreement denies plaintiffs such as herself the ability to pursue class actions and vindicate small claims. This reasoning is not persuasive.

California courts have held that in order for a contract term to be substantively unconscionable, it must be so one-sided as to "shock the conscience." *See 24 Hour Fitness, Inc. v. Superior Court,* 66 Cal. App.4th 1199, 1212–1213, 78 Cal.Rptr.2d 533 (1998). The arbitration clause in the present case is not one-sided because it requires *both* sides to submit all claims they may have against one another to the NAF. Although in certain situations the arbitration clause may end up benefiting defendants, it does not so heavily favor defendants at the expense of Arriaga and her class that it rises to the level of being unenforceable. Moreover, the Supreme Court has recognized specific advantages that the arbitration forum affords plaintiffs such as Arriaga. *See Allied–Bruce Terminix Companies v. Dobson,* 513 U.S. 265, 280–281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (explaining that Congress had the needs of consumers in mind when drafting the FAA and that arbitration may favor individual consumers with small claims). Furthermore, it is noteworthy that defendants have chosen to forego their right to compel arbitration in a current state court proceeding regarding some of the same claims at issue here.[8] This constitutes evidence that the arbitration clause is not as one-sided as Arriaga claims and that there are instances where defendants may wish

to defend the action in a judicial forum as well. Finally, numerous courts have upheld even non-mutual arbitration clauses against unconscionability defenses. *See, e.g., Gray v. Conseco, Inc.,* No. 00–322, 2000 WL 1480273 at *4–5 (C.D.Cal. Sept.29, 2000); *Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 183 (3d Cir.1999); *In re Pate,* 198 B.R. 841, 844 (Bkrtcy.S.D.Ga. 1996); *Green Tree Fin. Corp. v. Wampler,* 749 So.2d 409, 416 (Ala.1999). Thus, even when one party alone has the option of compelling arbitration, courts have not found the arbitration clause to be unconscionable. Arriaga thus fails to show that the arbitration clause is substantively unconscionable as well. Therefore, the Court finds that the arbitration provision in the Agreement was neither fraudulently induced nor unconscionable, and is therefore valid.

### 3. Amenability of the Statutory Claims to Arbitration

Statutory claims in general may be subject to arbitration. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 238–42, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (holding that civil RICO claims can be subjected to arbitration); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (holding that federal antitrust claims can be subjected to arbitration); *Johnson v. West Suburban Bank,* 225 F.3d 366, 377 (3d Cir.2000) (holding that TILA claims are arbitrable, even when plaintiff seeks to bring claim in the form of a class action). In some situations, however, statutory claims cannot be subjected to arbitration. The Supreme Court has held that statutory claims are not arbitrable when "Congress itself has evinced

---

**8.** This fact is discussed at greater length in addressing Arriaga's claim that defendants waived their right to compel arbitration or

should be judicially estopped from asserting such a right.

an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi*, 473 U.S. at 628, 105 S.Ct. 3346. Such an intention of Congress can be found in three ways: by looking to the text of the statute, looking to the legislative history, or finding an "inherent conflict" between arbitration and the statute's underlying purposes. *McMahon*, 482 U.S. at 226–27, 107 S.Ct. 2332. Finally, in light of the federal policy favoring arbitration, "the burden is on the party opposing arbitration ... to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *McMahon*, 482 U.S. at 227, 107 S.Ct. 2332.

Regarding her claims under California Business and Professions Code § 17200 for a public injunction and disgorgement of funds, Arriaga contends that since this statute is designed to provide an equitable remedy for a public wrong, forcing her to arbitrate would result in an "inherent conflict" between arbitration and the underlying purposes of the statute. Arriaga relies largely on two California appellate court decisions holding that equitable claims under section 17200 are not arbitrable because they are brought on behalf of the public to remedy a general public harm. *See Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*, 83 Cal.App.4th 677, 99 Cal. Rptr.2d 809 (2000); *Groom v. Health Net*, 82 Cal.App.4th 1189, 98 Cal.Rptr.2d 836 (2000). The California appellate courts, in turn, relied on the California Supreme Court's reasoning in *Broughton v. Cigna Healthplans*, 21 Cal.4th 1066, 90 Cal. Rptr.2d 334, 988 P.2d 67 (1999) (holding that the public injunctive relief under the Consumer Legal Remedies Act ("CLRA") is not subject to arbitration).[9] The California Supreme Court first drew a distinc-

tion between remedying a public wrong and resolving an individual dispute and reasoned that arbitration is specifically designed to address the latter. That court then held that arbitrators had certain institutional limitations, specifically their inability to maintain and modify public injunctions over long periods of time as well as their lack of accountability to the public, which made arbitration incompatible with that injunctive relief. Based on this problem, the California Supreme Court reasoned that there was an "inherent conflict" between arbitration and the underlying goals of the statute, evidencing an intent of the California legislature that claims for injunctive relief under CLRA were not meant to be subject to arbitration agreements. *See id.* at 1081–1082, 90 Cal. Rptr.2d 334, 988 P.2d 67.

Determining the California state legislature's intent as to the arbitrability of section 17200 claims, however, is not the end of the analysis. As discussed supra, statutory claims are not subject to arbitration when *Congress itself* indicates an intention to the contrary. *See Mitsubishi*, 473 U.S. at 628, 105 S.Ct. 3346. Because the federal government is supreme in its proper sphere of action, only it may decide when to exempt statutory claims from the FAA. Thus, Arriaga still needs to contend with the Supremacy Clause of the United States Constitution, which mandates that the FAA trumps state statutory schemes that are contrary to its purposes. For the following reasons, the Court finds that even if the California state legislature did intend to preclude section 17200 claims from being arbitrated, the FAA still requires that the arbitration agreement be enforced.

---

**9.** Interestingly, although plaintiff claims the same kind of injunctive relief under CLRA that the California Supreme Court addressed, she only claims that her section 17200 claims

are exempt from arbitration. Nonetheless, the Court's reasoning today applies with equal force against plaintiff's CLRA claims.

### (a) The Intent of the California Legislature in Enacting Section 17200

■ As a preliminary matter, the Court notes that the California legislature, in adopting section 17200, did intend that claims for public injunctive relief be immune from valid arbitration agreements.[10]

However, Arriaga further asserts that her claim for disgorgement of funds (as well as her claim for injunctive relief) under section 17200 was also meant to be protected from arbitration agreements. (*See* Pl.'s Opp'n at 20–21.) Relying on reasoning analogous to that of the California Supreme Court in *Broughton,* she claims that arbitration lacks the institutional capacity necessary to maintain and effectuate a proper disgorgement of funds from CCB and ACS to the public, and that only judicial forums can accomplish this goal. Specifically, Arriaga argues that "this cause is not suitable for arbitration because the remedy of disgorgement of profits is not feasible for the arbitration forum to manage, due to the continuing control over the restitution process that can only be maintained by a judicial body." (Pl.'s Opp'n at 20.)

The California Supreme Court's reasoning in *Broughton,* however, does not apply to Arriaga's disgorgement of funds claim. Unlike a public injunction, disgorgement of funds does not need to be continuously monitored because its object is limited in time and scope. Once the profits to be disgorged and the recipients of those funds are identified, there is no need for long term modification and correction necessitating judicial supervision. Therefore, the Court agrees with defendants that disgorgement of funds is essentially the same as awarding money damages, and within the power of the arbitrators to award. Thus, the Court finds that the California state legislature did not intend to preclude arbitration for the disgorgement of funds claim available under section 17200 because there is no "inherent conflict" between this remedy and arbitration.[11]

### (b) The Supremacy Clause

■ Despite the fact that the California legislature has demonstrated an intention to preclude arbitration of claims for public injunctive relief under section 17200, however, the Court must still address whether a state legislature may limit the enforceability of valid arbitration agreements under the FAA implicitly by offering statutory remedies, the enforcement of which would be inconsistent with arbitration.[12]

---

10. Defendants claim, in a footnote to their reply brief, that Arriaga does not have standing to seek injunctive relief under section 17200 because she is no longer a cardholder. This argument is without merit. As discussed, the purpose of section 17200 is to protect the *public* from harmful business practices. Although Arriaga is not a cardmember any longer, she is certainly a member of the public and thus has standing to bring her section 17200 claim for injunctive relief.

11. At least one federal district court has agreed with the two California appellate courts that the California legislature intended to preclude section 17200 claims from agreements to arbitrate. *See Gray v. Conseco Inc.,* No. 00–322, 2000 WL 1480273 at *7–8 (C.D.Cal. Sept. 29, 2000) (holding that both disgorgement of funds and claims to public injunctive relief under section 17200 are not arbitrable).

12. Although the district court in *Gray* had the same issue before it, it concluded that "when considering whether a state statutory claim is arbitrable, a court should look to the intent of the state legislature, just as it looks to the intent of Congress when determining if a federal statutory claim is arbitrable." *Gray v. Conseco, Inc.,* No. 00–322, 2000 WL 1480273 at *7 (C.D.Cal. Sept. 29, 2000). For reasons stated herein, the Court does not share this view that state legislatures are on the same footing as Congress in determining when arbitration agreements can be exempted from the FAA.

However, the district court in *Stuart v. Household Retail Servs.,* No. 99–987 (C.D.Cal. Dec. 14, 2000), also addressed whether sec-

The California Supreme Court found that "it would be perverse to extend the [FAA] so far as to preclude states from passing legislation the purposes of which make it incompatible with arbitration." *Broughton*, 21 Cal.4th at 1083, 90 Cal.Rptr.2d 334, 988 P.2d 67. Thus, that court concluded that Congress' power to exempt from the FAA certain statutory remedies that were inconsistent with arbitration extended to the state legislatures as well. Nevertheless, this Court feels bound by United States Supreme Court precedent stating that only Congress may determine when statutory remedies are not subject to arbitration agreements under the FAA.

California and the United States Supreme Court have previously conflicted over this issue and the Supreme Court's message has been clear, unequivocal and consistent each time: state legislatures may not attempt to limit the enforceability of arbitration agreements governed by the FAA. *See, e.g., Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (holding that the FAA preempts a California statute preventing arbitration of a claim to collect wages); *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (holding that the FAA also preempts a California statute prohibiting the waiver of judicial forum in the face of a valid arbitration agreement for claims under the California Franchise Investment Law). *See also, Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 1312–13, 149 L.Ed.2d 234 (2001) (reaffirming the impact of *Southland's* holding in that the FAA trumps state statutes which erode the enforceability of valid arbitration agreements).

Speaking specifically to Congress' intent regarding the enforceability of arbitration agreements under the FAA, the Supreme Court concluded that "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Southland*, 465 U.S. at 16, 104 S.Ct. 852. Moreover, the FAA "withdrew the power of states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Id.* at 10, 104 S.Ct. 852. Finally, the Supreme Court in *Southland* made clear that:

> [There are] only two limitations on the enforceability of arbitration provisions governed by the [FAA]: they must be part of a written maritime contract or a contract 'evidencing a transaction involving commerce' and such clauses may be revoked upon grounds 'as exist at law or in equity for the revocation of any contract.' We see nothing in the [FAA] indicating that the broad principle of enforceability is subject to *any additional limitations under state law*.

*Id.* at 10–11, 104 S.Ct. 852 (emphasis added). Unless one of these two exceptions is present, arbitration agreements are to be enforced "unless *Congress itself* has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi*, 473 U.S. at 628, 105 S.Ct. 3346 (emphasis added).

It is this third exception which the California courts and Arriaga wish to make available to the state legislatures. As discussed above, Arriaga has demonstrated that there is an "inherent conflict" between arbitration and the underlying purpose of offering public injunctive relief

---

tion 17200 claims were arbitrable, but concluded that the plaintiffs in that case failed to prove that public injunctive relief was inherently inconsistent with arbitration. Thus, that court did not have to reach the issue of whether, if the relief was deemed to be inherently inconsistent with arbitration, the Supremacy Clause would prohibit the legislature from thereby rendering unenforceable a valid arbitration agreement under the FAA.

under section 17200. This, in turn, constitutes evidence that the California legislature meant to preclude enforcement of agreements to arbitrate such claims. To take the final step, however, and conclude that this would bar the enforcement of the arbitration clause as to the injunctive claim under section 17200, would do disservice to Supreme Court precedent and violate the Supremacy Clause of the United States Constitution.

State legislatures cannot be allowed to do implicitly what the Supreme Court and the FAA do not allow them to do explicitly. If it were enough for a state legislature to declare, through the nature of the remedies it offers in a statute, that it did not wish to have certain claims subjected to arbitration, states would essentially be allowed to undercut the FAA in an area in which Congress is supreme (i.e., interstate commerce). It is clear that states cannot insert specific text into their statutes which prohibits parties from waiving their right to vindicate statutory claims in a judicial forum. *See Perry v. Thomas,* 482 U.S. 483, 491, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (holding that section 229 of the California Labor Code was in "unmistakable conflict" with the FAA since it required a judicial forum for the resolution of wage disputes and that "under the Supremacy Clause, the state statute must give way"). Therefore, it must be equally invalid for a state to implicitly declare a prohibition on arbitration by fashioning statutory remedies which are inherently inconsistent with an arbitral forum. If the Court found otherwise, it would allow the California Legislature to do what the Supreme Court and Congress have expressly provided that they may not do under the FAA: "single out arbitration provisions for suspect status." *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). The California Legislature cannot "decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause." *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). By offering remedies under section 17200 which are incompatible with arbitration and thereby seeking to render unenforceable valid agreements between parties to arbitrate those claims, the California Legislature has done just that.

As a final note, the California Supreme Court in *Broughton* indicated that the U.S. Supreme Court "has never directly decided whether a [state] legislature may restrict a private arbitration agreement when it inherently conflicts with a public statutory purpose." *Broughton,* 21 Cal.4th 1066, 1083, 90 Cal.Rptr.2d 334, 988 P.2d 67. The Court agrees with Justice Chin's dissenting opinion, however, demonstrating that the Supreme Court has, in fact, decided this issue. *See id.* at 1092, 90 Cal.Rptr.2d 334, 988 P.2d 67 (Chin, J., dissenting). In *Keating v. Superior Court,* 31 Cal.3d 584, 598–99, 183 Cal.Rptr. 360, 645 P.2d 1192 (1982), the California Supreme court held that there was an exception under the FAA for state statutes evincing a "determination that the public interest is best served by maintaining access to the [judicial] remedies which the Legislature has provided." *Keating* at 602, 183 Cal.Rptr. 360, 645 P.2d 1192. When the Supreme Court addressed the issue in *Southland v. Keating,* however, it held that such a reading of the statute at issue "directly conflicts with § 2 of the [FAA] and violates the Supremacy Clause." *Southland,* 465 U.S. at 10, 104 S.Ct. 852. Therefore, it seems as though the Supreme Court has foreclosed the possibility that states may exempt their statutory remedies from the FAA merely by making them inconsistent with arbitration.

Thus, although the public injunctive relief available under section 17200 might be

evidence that the state legislature did not want this type of claim to go to arbitration, unless Congress declares otherwise,[13] that determination will not be enough to make the arbitration clause unenforceable. All of Arriaga's claims, including her section 17200 claims, therefore, are subject to the valid arbitration agreement under the FAA.

### 4. Defendants' Ability to Compel Arbitration

Arriaga finally contends that defendants are unable to compel arbitration because they have waived their right to do so or should be judicially estopped from doing so. The Court finds these arguments unpersuasive and addresses them in turn.

### (a) Defendants have not Waived Their Right to Compel Arbitration

■ The Ninth Circuit applies a three-pronged test when determining whether a party has waived its right to compel arbitration under contract. Specifically "a party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). However, "any party arguing waiver of arbitration bears a heavy burden of proof." *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 758 (9th Cir.1988) (quoting *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir.1982)). Additionally, "any

doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself *or an allegation of waiver*, delay or like defense to arbitrability." *Mitsubishi*, 473 U.S. at 626, 105 S.Ct. 3346 (emphasis added).

There is no doubt regarding the first element of the test. Clearly CCB and ACS knew that they had the right to compel arbitration. The Agreement contained the arbitration clause which CCB and ACS drafted. Moreover, they have recently exercised this right in other similar lawsuits.[14] However, Arriaga has a substantially harder time convincing the Court that the other two elements are met.

To prove that CCB and ACS acted inconsistently with their right to arbitrate, Arriaga relies on the parallel litigation proceeding in the Orange County Superior Court (the "*Allec* Litigation"). Arriaga alleges that in the *Allec* case, defendants faced similar claims arising out of similar actions to those that plaintiff rests her claims on in this case. (*See* Pl.'s Opp'n at 7.) When the element of inconsistent action has been found to be satisfied in this circuit, it has almost always been in the context of a party that has initiated litigation for a prolonged period of time and then sought to enforce an arbitration provision. *See, e.g., Van Ness Townhouses*, 862 F.2d 754, 759 (holding that party had waived his right to compel arbitration after choosing to "litigate actively the entire matter" for two years and then decided to file a motion compelling arbitration).

---

**13.** The parties do not contend that Congress has, in fact, declared that public injunctive relief is not subject to arbitration. However, the First Circuit Court of Appeals has rejected such an indication in light of the Supreme Court's view that "public rights may be enforced through arbitration." *See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith*, 170

F.3d 1 (1st Cir.1999), citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

**14.** *See, e.g., Cutshall v. Cross Country Bank*, No. 00–8670–00–RYSKAMP (S.D. Fla. April 5, 2001); *Turpin v. Cross Country Bank*, No. CIV–00–1089–L (W.D. Okla. April 4, 2001).

Since the present motion to compel arbitration was filed in a timely manner, though, Arriaga seeks to rely on *Hoffman Construction Company of Oregon v. Active Erectors and Installers, Inc.*, 969 F.2d 796 (9th Cir.1992). In that case, the plaintiff brought several claims and decided to litigate them, despite the existence of an enforceable arbitration clause between the parties. After litigation, the same plaintiff attempted to bring a RICO claim under the same core of operative facts, yet demanded arbitration of that claim. The court in *Hoffman* held that based on his actions in bringing the previous claims, the plaintiff had waived his right to compel arbitration of his RICO claim.

Arriaga's reliance on *Hoffman* is misplaced as this case is distinguishable on the facts. Although defendants did choose to forego arbitration in the *Allec* case, unlike the party seeking to arbitrate in *Hoffman*, defendants, in the present case, do not seek to force arbitration of essentially the same case, against the same party. The *Allec* litigation involves a different forum (state court vs. federal court), different claims, and different plaintiffs than the case at hand. Thus, all defendants are doing is choosing to enforce their contractual rights in one case brought against them, and not choosing to enforce them in another. Moreover, the fact that Arriaga may be part of the stipulated *Allec* class does not warrant a different conclusion. It would be absurd to find that because defendants did not assert their right to compel arbitration in that case, they can no longer assert that right when an absent member of the *Allec* class decides to bring a completely new lawsuit in a different forum.

Arriaga has failed to convince the Court that she suffered any prejudice as a result of defendants failure to compel arbitration in the *Allec* case. Arriaga claims that she will be prejudiced by defendants' actions because she will be forced to arbitrate and be denied the effective vindication of her class action claims or to be part of the *Allec* settlement, which has yet to be approved. This "prejudice," however, is nothing more than a restatement of the reasons Arriaga does not wish to arbitrate in the first place. The prejudice that a party may suffer from arbitration itself is not enough to satisfy the *Fisher* analysis. Rather, Arriaga must prove that her prejudice is "resulting from" the inconsistent acts of the defendants (their decision to litigate, instead of arbitrate, the *Allec* case). There is no such prejudice to Arriaga in this regard. Therefore, the Court rejects Arriaga's contention that defendants have waived their right to compel arbitration because they have acted consistently with that right, and because their decision to litigate the *Allec* case does not prejudice Arriaga.

**(b) Defendants are not Judicially Estopped from Compelling Arbitration**

■ On essentially the same grounds as her argument that defendants have waived their right to compel arbitration, Arriaga claims that defendants should be judicially estopped from doing so. Accordingly, this argument is disposed of with reasoning similar to the discussion above. "The precise law of judicial estoppel is unclear in the Ninth Circuit." *Yanez v. United States*, 989 F.2d 323, 326 (9th Cir.1993). Nonetheless, it is clear that whether the majority rule or minority rule is adopted, "in either case, the purpose of the doctrine is to protect the integrity of the judicial process." *Morris v. California*, 966 F.2d 448, 453 (9th Cir.1991).

Upon examining Arriaga's claim, it is clear that allowing defendants a choice between foregoing enforcement of their contractual rights in one case and demand-

ing enforcement of those rights in a different case has no bearing on the integrity of the judicial process. Moreover, all of the cases that Arriaga cites relating to this matter are situations in which a party has made inconsistent *claims or assertions*. In the case at hand, defendants have only decided to approach the enforcement of their contract in different ways in different cases and have not made any inconsistent claims or factual allegations. The primary concern of the judicial estoppel doctrine is avoiding the situation in which the courts have actually issued two contradictory decisions on a matter (the majority rule) and/or preventing parties from trying to achieve that result (the minority rule). *See Morris*, 966 F.2d at 452–53. The Court sees neither possibility before it now, and thus declines to judicially estop defendants from asserting their valid contractual rights against Arriaga.

### 5. Motion to Strike Plaintiff's Class Action Allegations

As a final matter, defendants have asked the Court to strike Arriaga's class action allegations as part of the present motion to compel arbitration. They base their request on their claim that the NAF rules, which the parties have agreed will govern the arbitration proceedings, do not allow for class-wide claims. While this might very well be true, Arriaga is correct in that striking the class action allegations from her complaint would be beyond the scope of this motion. In this motion, this Court may only determine whether the parties should be forced to arbitrate their disputes according to a valid and enforceable arbitration agreement under the FAA. The Court thus declines to strike plaintiff's class allegations as part of this motion to compel arbitration.

### CONCLUSION

Accordingly, for the reasons stated above, the Court **GRANTS** the defendants'

motion to compel arbitration of all claims in the complaint and defendants' motion to stay proceedings. The court **DECLINES** defendants' request to strike plaintiff's class action allegations from the complaint as part of this motion. The Court hereby **ORDERS** that this action be stayed in its entirety pending arbitration, subject to its re-opening by the parties at the conclusion of arbitration.

**IT IS SO ORDERED.**