**Jeff BISCHOFF and Mitchell Guzik, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**DIRECTV, INC., et al., Defendants.**

**No. 00CV09541.**

United States District Court, C.D. California.

Jan. 14, 2002.

---

Gary J. Gorham, Randall J. Sunshine, Liner Yankelevitz Sunshine & Regenstreif, Santa Monica, CA, Jeffrey M. Tillotson, Lynn Stodghill Melshimer & Tillotson, Dallas, TX, for Plaintiff.

Jeffrey S. Davidson, Melissa D. Ingalls, Marcie Lynn Gardner, Kirkland & Ellis, Los Angeles, CA, Daniel S. Floyd, Steven E. Sletten, Gibson Dunn & Crutcher, Los Angeles, CA, Elliot S. Kaplan, Christopher W. Madel, Robins Kaplan Miller & Ciresi, Minneapolis, MN, J. Kevin Snyder, Robins Kaplan Miller & Ciresi, Los Angeles, CA, Howard Feller, McGuire Woods Battle & Booth, Richmond, VA, Philip E. Smith, Curtis P. Holdsworth, Smith Ellison & Harraka, Irvine, CA, Robert L. Green, Michael J. Pepek, Green & Hall, Orange, CA, for Defendants.

## ORDER GRANTING MOTION TO COMPEL ARBITRATION AND GRANTING MOTION FOR STAY OF PROCEEDINGS

COLLINS, District Judge.

Defendant's motion to compel arbitration and stay of proceedings came on regu-

larly for hearing before this Court on January 14, 2002.[1]

On November 15, 2000, Defendant DirecTV, Inc. ("DirecTV" or "Defendant") filed a Motion to Stay Proceedings Pending Resolution of Duplicative Litigation, or in the Alternative, to Stay Proceedings Pending Arbitration and to Compel Arbitration ("Motion to Stay").[2] On December 22, 2000, Plaintiffs filed an opposition. On January 8, 2001, Direct filed a reply.

Supplemental briefing was filed by Plaintiff on March 30, 2001 ("Pls' March 2001 Supp. Brief") and by Defendant on April 13, 2001 ("Def's April 2001 Supp. Brief"). On April 23, 2001, the Court stayed the instant action pending resolution of the action *EchoStar, et al. v. DirecTV, et al.* On November 9, 2001, DirecTV notified the Court of the resolution of the *EchoStar* action. The Court lifted the stay on December 10, 2001.

On December 21, 2001, DirecTV filed a supplemental brief in support of their Motion to Stay ("Def's December 2001 Supp. Brief") and on January 7, 2002, Plaintiffs filed their supplemental brief ("Pls' January 2002 Supp. Brief").[3]

The Court has thoroughly considered the papers presented by the parties and has listened to oral argument by the parties. For the reasons stated herein, the Court GRANTS the Moving Parties' Motion to Compel Arbitration and GRANTS the Moving Parties' Motion for a Stay of Proceedings.

## I. Background

DirecTV provides television programming services via satellite to consumers nationwide. *See* Motion at 8. To obtain these services, a potential DirecTV customer first purchases from a retailer the equipment necessary to receive a satellite signal. *Id.* The potential customer then calls DirecTV and becomes a subscriber by electing to receive one or more of DirecTV's numerous programming packages. *Id.* A "Customer Agreement," which governs the relationship formed between DirecTV and the customer, is then mailed to each customer along with the first billing statement. *Id.*

DirecTV mailed plaintiff Mitchell Guzik a Customer Agreement after Mr. Guzik began to receive services.[4] According to DirecTV, the Customer Agreement, dated October 1999, became binding as soon as Mr. Guzik received DirecTV's programming service. The Customer Agreement states:

> "This document describes the terms and conditions regarding your receipt and payment of DirecTV service. If you do not accept these terms, please notify us immediately and we will cancel your service. If you agree, it will mean that you accept these terms and, accordingly, they will be legally binding on you."

Customer Agreement at 1.

The contractual mechanism for dispute resolution is defined in paragraph 8 of the Customer Agreement, entitled "Resolving Disputes." Under paragraph 8(a), either

---

1. The Court notes that this motion to compel arbitration was brought as to Plaintiff Guzik only. *See* Notice of Motion at 1.

2. On November 15, 2000, this Motion to Stay was joined by defendants Thomson Consumer Electronics, Inc., RadioShack Corporation, Best Buy Co. Inc., and Circuit City Stores, Inc.

3. On January 11, 2002, DirecTV filed a "Notice of Lodging of Additional Authority in Support of its Motion to Stay." As DirecTV did not seek permission from the Court to file this supplemental briefing, the Court has not relied on this filing.

4. The Court notes that the parties dispute the date on which Mr. Guzik received the Customer Agreement.

DirecTV or plaintiff must first notify the other of a claim at least 60 days in advance of filing an arbitration demand so the parties may attempt to resolve the claim informally. *See* Customer Agreement ¶ 8(a). The Customer Agreement defines "claim" as "any legal claim relating to this Agreement, any addendum, or your Service."[5] Paragraph 8(b) of the Customer Agreement provides that any claim that cannot be resolved informally must be resolved by binding arbitration:

> Except as provided in Section 8(d), if we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration. The arbitration will be conducted under the Commercial Arbitration Rules of the American Arbitration Association that are in effect at the time the arbitration is initiated (referred to as the "AAA Rules") and under the rules set forth in this Agreement.

Customer Agreement ¶ 8(b).

The arbitration clause also sets out possible payment mechanisms for arbitration. For instance, the clause states,

> "If you initiate the arbitration, you agree to pay a fee of $125 or, if less and you tell us in writing, the amount that you would pay to initiate a lawsuit against us in the appropriate court of law in your state. We agree to pay any additional fee or deposit required by the American Arbitration Association in excess of your filing fee ..."

Customer Agreement ¶ 8(b).

The arbitration clause exempts disputes involving (i) intellectual property rights of the parties or of DirecTV's operating licenses, (ii) illegal rebroadcasting, and (iii) violations of the Communications Act of 1934 or the Electronic Communications Privacy Act. *Id.* ¶ 8(d).

On September 7, 2000, plaintiffs Jeff Bischoff and Mitchell Guzik, on behalf of themselves and all others similarly situated, brought an antitrust action in this Court for damages and declaratory and injunctive relief under the Sherman Act and the California Cartwright Act against DirecTV and a number of other defendants. *See* Cpt. at 1. Plaintiffs alleged that DirecTV, by itself, and by conspiring with its co-defendants, illegally attempted to monopolize the distribution and sale of high-power direct satellite service and equipment. *See* Cpt. at 2. According to Plaintiffs, DirecTV, which effectively controls more than 70% of the Direct Broadcast Satellite ("DBS") market, has attempted to exploit its dominant market position to exclude competition, force retailers to boycott competitors' products and services, restrain trade, and monopolize the DBS market. *Id.* Plaintiffs assert that as subscribers and customers of DirecTV, they have been injured as a result of Defendants' anti-competitive actions and competition in the DBS market has been stifled. *Id.*

## II. Standard

■ Under the Federal Arbitration Act, "upon being satisfied that the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Thus, a district court must determine: (1) whether a valid, enforceable arbitration agreement exists and (2) whether the claims asserted in the complaint are within the scope of the arbitration agreement. *Id.*; *Howard Elec. & Mech. Co., Inc. v. Frank Briscoe Co., Inc.*, 754 F.2d 847, 849 (9th Cir.1985); *Chiron*

**5.** "Service" is defined by the October 1999 Customer Agreement collectively as DirecTV subscription programming, Direct Ticket Pay Per View Services, and other services, and is described in paragraphs 1(a) through 1(n) of the Customer Agreement.

*Corp. v. Ortho Diagnostic Systems, Inc.,* 207 F.3d 1126, 1130 (9th Cir.2000). "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

 The scope of an arbitration agreement is governed by federal substantive law. *Tracer Research Corp. v. National Environ. Servs. Co.,* 42 F.3d 1292, 1294 (9th Cir.1994); *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 719 (9th Cir.1999). Moreover, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.,* 207 F.3d 1126, 1130 (9th Cir.2000) (citing *Moses H. Cone Memorial Hosp. v. Mercury Const.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Nevertheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Tracer,* 42 F.3d at 1294 (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Accordingly, the Court must first determine the breadth of the arbitration clause and then determine if Plaintiff's claims are subject to the arbitration clause. *See id.* at 1295 (interpreting contractual language and then considering type of claim); *Simula,* 175 F.3d at 720–25 (same).

 The general policy in favor of arbitration applies equally to antitrust claims. *Nghiem v. NEC Electronic, Inc.,* 25 F.3d 1437 (9th Cir.1994), *cert. denied,* 513 U.S. 1044, 115 S.Ct. 638, 130 L.Ed.2d 544 (1994); *Simula,* 175 F.3d 716; *Kotam Electronics, Inc. v. JBL Consumer Products, Inc.,* 93 F.3d 724 (11th Cir.1996). Similarly, because the Cartwright Act is patterned after the Sherman Act, Califor-

nia courts have held that Cartwright Act claims are arbitrable. *Crown Homes, Inc. v. Landes,* 22 Cal.App.4th 1273, 27 Cal. Rptr.2d 827 (1994); *Wolitarsky v. Blue Cross of California,* 53 Cal.App.4th 338, 61 Cal.Rptr.2d 629 (1997).

## III. Analysis

Defendants argue that Plaintiffs should be compelled to arbitrate their pending claims and that the Court should stay the instant action because one of the named plaintiffs, Mitchell Guzik, agreed to arbitrate this type of dispute with DirecTV when he accepted DirecTV's programming services. *See* Notice of Motion at 1. Plaintiffs assert that they are not required to arbitrate their pending claims because the arbitration clause included in the Customer Agreement is invalid. Plaintiffs further argue that even if the arbitration agreement were found to be valid, it cannot be enforced in the instant matter because the arbitration clause does not cover the claims sought under the instant action and, in any event, is unconscionable. *See* Opp'n. at 10–18.

### A. A Valid and Enforceable Arbitration Agreement Exists Between the Parties

 Plaintiffs argue that the arbitration clause is unenforceable because Guzik did not agree to the arbitration provision. Plaintiffs note that DirecTV only provided the arbitration provision to Guzik *after* the parties had already entered into their agreement for satellite programming, *after* he had purchased the DirecTV equipment and *after* DirecTV had activated the service. *See* Pls' January 2001 Supp. Brief at 3. Plaintiffs further argue that DirecTV's actions amount to an attempt to "*add* terms to the parties' relationship *after* the customer is 'on the hook' for the services." Pls' Opp'n. at 13.

Plaintiffs cite a 1954 case, *Deering, Milliken & Co. v. Drexler*, 216 F.2d 116 (5th Cir.1954) and a California state court case, *Badie v. Bank of America*, 67 Cal.App.4th 779, 79 Cal.Rptr.2d 273 (1998), for the proposition that DirecTV cannot mail its subscribers "new terms." However, these cases are inapplicable to the instant matter because the Customer Agreement does not contain "new terms" nor does it "change" the terms of a prior agreement. The Customer Agreement contains the terms of the ongoing contractual relationship between DirecTV and its subscribers. Both *Badie* and *Deering* involved the addition of "new terms" into an already existing agreement.

Unlike the services at issue in this case, *Deering* involved the sale of goods. Before the seller sent the arbitration provision to the buyer, the buyer and seller had already reached agreement on the contract terms over the phone, and the buyer had accepted delivery of one installment of the goods. The court found that the seller's inclusion of an arbitration clause in the "Acceptance of Order" it mailed to buyer with an installment of the goods was an attempt to add additional terms to an already completed transaction. *Deering*, 216 F.2d at 118–19. This "battle of the forms" in a sale of goods situation, where the new terms are added to the parties' agreement at a later time, is entirely different than the case at hand.

In *Badie*, the defendant bank attempted to insert a new term—an arbitration clause—into an already existing customer agreement between the bank and four credit card account customers. The bank mailed each customer a half-page bill stuffer which informed them that, from that time forward, any dispute between a customer and the bank regarding customer accounts would be resolved by arbitration. While the California Court of Appeal held that the parties had not entered into an enforceable agreement to arbitrate, the court distinguished the facts in that case from a scenario in which an arbitration clause existed in an original agreement. The court stated, "[a]ll this is not to say that the bank could not have included an ADR clause in the original account agreement ... But the validity of an ADR provision included in an account agreement in the first instance is a different issue, which we are not required to address here." *Badie*, 67 Cal.App.4th at 801, 79 Cal.Rptr.2d 273.

Two years after the *Badie* decision, the California Court of Appeals distinguished *Badie* on precisely this ground in *Villa Milano Homeowners Assoc. v. Il Davorge*, 84 Cal.App.4th 819, 825, 102 Cal.Rptr.2d 1 (2000). In *Villa Milano*, the California Court of Appeal found that an arbitration agreement did in fact exist between the homeowners and the condominium developer.[6] In making this finding, the court distinguished *Badie*, where the bank had sought to "change" the terms to which the customers had already agreed. In *Villa Milano*, the arbitration clause had been a part of the covenants, conditions and restriction's (CC & R's) since the date that they were recorded.[7] The inclusion of an arbitration clause in the Customer Agreement in this case is similar to the arbitration agreement entered in *Villa Milano*, where the agreement to arbitrate was not an "addition" or change to a prior agreement between the parties.

**6.** The Court found the arbitration agreement was unenforceable on other grounds.

**7.** The *Villa Milano* court also noted that *Badie* did not involve condominium units and re-corded CC & R's and therefore, a separate body of law applied to the fact scenarios in both cases.

The Court finds the cases cited by Defendant, *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 592–93, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) and *Hill, et al. v. Gateway 2000,* 105 F.3d 1147 (7th Cir.1997), are most instructive on the instant matter. In *Gateway,* the customer purchased a computer over the phone and was sent the computer and the contract terms, including the arbitration provision, at the same time. The contract terms provided that the customer could return the computer if dissatisfied with those contract terms within 30 days. The court found that the plaintiff accepted the contract, including the arbitration clause, by keeping the computer for more than 30 days, and therefore, compelled arbitration according to the contract's terms. *Id.* at 1151. Plaintiffs argue that *Gateway* is distinguishable from the instant matter because the plaintiff in *Gateway* received the product and the terms of the sale at the same time and the consumer could have easily returned the goods. *See* Pls' Opp'n. at 14. The amount of time between Guzik's receipt of programming services from DirecTV and his receipt of the Customer Agreement is disputed by the parties. However, the Court does not find the length of time between the two events dispositive on the issue of whether a valid arbitration agreement exists between the parties. The more controlling issue is the economic and practical considerations involved in selling services to mass consumers which make it acceptable for terms and conditions to follow the initial transaction. *See ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1451 (7th Cir.1996). As Judge Easterbrook noted in *Gateway:*

> cashiers cannot be expected to read legal documents to customers before ringing up sales. If the staff ... had to read the four-page statement of terms ... the droning voice would anesthetize rather than enlighten potential buyers ... Customers as a group are better off

when vendors skip costly and ineffectual steps such as telephonic recitation, and instead use a simple approve-or-return device. Competent adults are bound by such documents, read or unread.

*Gateway,* 105 F.3d at 1149.

In *Carnival,* two passengers purchased tickets for a seven-day cruise, the terms of which, including a forum selection clause, were sent to passengers in the mail after they bought their tickets. The face of the ticket read, in pertinent part, "[t]he acceptance of this ticket by the person or persons named hereon as passengers shall be deemed to be an acceptance and agreement by each of them of all the terms and conditions of this Passage Contract Ticket." *Id.* at 587, 111 S.Ct. 1522. The court recognized practical business realities when it instructed that

> "[c]ommon sense dictates that a ticket of this kind will be a form contract the terms of which are not subject to negotiation and that an individual purchasing tickets will not have the bargaining power with the cruise line."

*Id.* at 593, 111 S.Ct. 1522. The court enforced the contract and the forum selection clause it contained against the passenger. The nature of the business in which DirecTV engages is similar to that of the customers in *Gateway* and *Carnival.* Practical business realities make it unrealistic to expect DirecTV, or any television programming service provider for that matter, to negotiate all of the terms of their customer contracts, including arbitration provisions, with each customer before initiating service.

Finally, the Court notes that four different courts around the nation, including a federal district court in the Western District of Texas, have ruled that the Customer Agreement presently at issue is binding on a DirecTV customer who accepts services from DirecTV and that disputes re-

lating to customer actions against DirecTV must be arbitrated pursuant to the Customer Agreement. *See Miller v. DirecTV*, No. W–00–CA–117 (W.D.Tex. July 25, 2000); *Steinberg v. Hughes Electronic Corp. and DirecTV*, No. 24052–1999 (Sup. Ct.N.Y.1999).

### B. Plaintiffs' Claims are Covered by the Arbitration Agreement

The scope of an arbitration agreement is governed by federal substantive law. *Tracer Research Corp. v. National Environ. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir.1994); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir.1999). Moreover, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir.2000) (citing *Moses H. Cone Memorial Hosp. v. Mercury Const.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); *see also Dandong Shuguang Axel Corp., Ltd. v. Brilliance Mach. Co.*, No. C 00–4480(SC), 2001 WL 637446 at *6 (N.D.Cal. June 1, 2001).

Plaintiffs argue that the arbitration agreement, if found to be enforceable, does not cover the dispute in this case because the agreement applies only to disputes arising from the parties' contractual relationship. *See* Pls' Opp'n. at 15. Plaintiffs contend that their claims in this case do not relate to non-performance by DirecTV under the parties' contract, but rather, relate to DirecTV's illegal conspiracies with other parties in an effort to violate anti-trust laws. *Id.*

However, the Court finds that the scope of the arbitration agreement is sufficiently broad to cover the instant claims as it extends to "any Claim either of us asserts," where a Claim is defined as "any legal claim relating to this Agreement ... or your Service." Similar language was used in *Arriaga v. Cross Country Bank*, 163 F.Supp.2d 1189 (S.D.Cal.2001) where the court found that the language of the arbitration clause requiring arbitration of claims that "in any way relate to or arise out of this Agreement, your Account, or your use or attempted use of the Car," was sufficiently broad to apply to the plaintiffs' alleged claims. *See Arriaga*, 163 F.Supp.2d at 1192.

In his complaint, Plaintiffs allege that DirecTV has been able to extract monopoly prices for its programming services supposedly as a result of its ability to induce retailers to sell only DirecTV compatible electronic equipment and DirecTV programing. *See* Cpt. ¶¶ 33–40. Plaintiffs allege that they have paid higher prices for services and equipment than they otherwise would have but for DirecTV's alleged anti-competitive acts. *See* Cpt. ¶ 45. These allegations center around DirecTV's services, disputes which clearly fall within the scope of the arbitration clause.

### C. The Arbitration Provision is Not Unconscionable

Despite the "liberal federal policy favoring arbitration agreements," *Green Tree Fin. Corp.—Alabama v. Randolph*, 531 U.S. 79, 81, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), the Court should look to state law to address issues concerning the validity and enforceability of contracts. *See Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936–37 (9th Cir.2001) (citing *Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (noting that under § 2 of the FAA, state law, "whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally" (emphasis in original))). Thus, "generally applicable contract defenses such as fraud, duress, or unconscionability, may be ap-

plied to invalidate arbitration agreements without contravening § 2." *Ticknor,* 265 F.3d at 937 (citing *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). On a motion to compel arbitration, a court cannot consider whether the contract as a whole is unconscionable. Instead, a court is limited to considering whether the arbitration clause in the agreement is unconscionable. *See Gray v. Conseco, Inc.,* No. CV 00–322, 2000 WL 1480273 (C.D.Cal. Sept. 29, 2000) ("*Gray I*") (citing *Colfax Envelope Corp. v. Local 458–3M, Chicago Graphic Communications Int'l Union,* 20 F.3d 750, 754 (7th Cir.1994)).

▮▮▮ The unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. *See Armendariz,* 24 Cal.4th at 113, 99 Cal.Rptr.2d 745, 6 P.3d 669. An adhesion contract is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Gray I,* 2000 WL 1480273 * 3 (citing *Neal v. State Farm Ins. Cos.,* 188 Cal.App.2d 690, 694, 10 Cal. Rptr. 781 (1961)). An adhesion contract is unconscionable when both procedural unconscionability, meaning surprise or distress stemming from unequal bargaining power, and substantive unconscionability, meaning overly harsh or one-sided terms are present. *See Armendariz v. Foundation Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000). However, procedural and substantive unconscionability "need not be present in the same degree." *Id.* When great substantive unconscionability is present, less procedural unconscionability is required before the agreement will be invalidated. *See Gray I,* 2000 WL 1480273 * 3.

▮▮▮ As an initial matter, the Court agrees with Plaintiffs that the Customer Agreement signed by Guzik was a contract of adhesion as it was a form contract imposed by the party with superior bargaining power and Plaintiffs could not negotiate the terms, but could only "take them or leave them." Therefore, the Court finds the arbitration agreement to be procedurally unconscionable as "a finding of a contract of adhesion is essentially a finding of procedural unconscionability." *See Flores v. Transamerica Homefirst, Inc.,* 93 Cal.App.4th 846, 853, 113 Cal.Rptr.2d 376 (2001). However, to find that an arbitration clause is invalid, substantive unconscionability must also exist.

Plaintiffs argue that the arbitration agreement is substantively unconscionable because (1) it does not permit the arbitrability of class action claims and (2) it is comprised of one-sided terms and lacks mutuality. *See* Pls' Opp'n. at 15–16.

**1. The Arbitration Agreement's Silence on the Arbitrability of Class Actions Does Not Render it Substantially Unconscionable**

▮▮▮ Plaintiffs argue that the arbitration clause in the Customer Agreement is unenforceable because it effectively forecloses the possibility of class-wide determination of customer disputes. *See* Pls' Opp'n. at 16. Plaintiffs further assert that DirecTV's attempt to force an arbitration agreement on its customers is essentially an effort to avoid class action lawsuits because DirecTV knows "that many claims which would be worth pursuing only as a class action (due to cost compared to potential damages) would not be pursued in arbitration." *See* Pls' Opp'n. at 16.

Plaintiffs refer to *Lozada v. Dale Baker Oldsmobile, Inc.,* 91 F.Supp.2d 1087 (W.D.Mich.2000) and *Powertel, Inc. v. Bexley,* 743 So.2d 570 (Fla.Dist.Ct.App.1999) as support for their argument that under California law, the arbitration clause is unconscionable because it prohibits class

actions. While both of these cases held that arbitration agreements that prohibited the resolution of class actions through arbitration were unconscionable, the Court is not persuaded by either of these cases. As an initial matter, *Lozada* is no longer reliable law, as it based its holding largely on a case which was subsequently reversed by the Third Circuit. *See Johnson v. West Suburban Bank*, 225 F.3d 366 (3rd Cir. 2000). Moreover, *Lozada* was based on Michigan state law, not California state law.

In *Powertel*, a class of plaintiffs brought an action alleging that the defendant cellular telephone service provider had wrongfully billed services. After the plaintiffs entered into an original service contract, the provider mailed plaintiffs a pamphlet describing new provisions, one of which included an arbitration clause. The Florida trial court found that the arbitration clause was unconscionable for a number of reasons, including (1) the fact that the arbitration clause was added to an existing agreement, (2) the arbitration agreement limited the provider's liability to actual damages, (3) the clause precluded class litigation, which would be the most economically feasible remedy for the plaintiffs in that case and (4) the clause could not be applied because the dispute had already ripened into a lawsuit. While the *Powertel* court based its finding that the arbitration clause was unconscionable partly on the fact that it prohibited class actions, this Court is not convinced that the *Powertel* court would have made the finding of unconscionability on the class action prohibition alone.

The more persuasive case in this matter is *Champ v. Siegel Trading Co., Inc.*, 55 F.3d 269 (7th Cir.1995). The *Champ* plaintiffs argued that the court had authority to certify their claims for class arbitration even though the parties' contract did not expressly provide for class arbitration.

*Id.* at 274. The Seventh Circuit disagreed and held that Section 4 of the FAA forbids "class arbitration where the parties' arbitration agreement is silent on the matter." *Id.* at 275. The Court reasoned that Section 4 requires that courts enforce arbitration agreements "in accordance with the terms of the agreement" and, when that agreement does not mention class arbitration, courts are "prohibited from reading such a procedure into these arbitration agreements." *Id.* at 275–77 (quoting Section 4 of the FAA). The Court further found that, absent an agreement to arbitrate class claims, neither the FAA nor the rules of the American Arbitration Association independently provide courts with authority to order arbitration panels to hear claims on a class-wide basis. *Id.; accord id.* at 277–78 (Rovner, J., concurring).

Similar to Guzik, the *Champ* plaintiffs also complained that "various inefficiencies and inequities ... will result from denying them the opportunity to pursue arbitration on a class basis." *Id.* at 277. The Seventh Circuit rejected that argument and noted that the Supreme Court has repeatedly held that courts "must rigorously enforce the parties' agreement as they wrote it, 'even if the result is piece-meal litigation.'" *Id.* (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). The *Champ* court further noted that "[w]hen contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a formal trial." *Champ*, 55 F.3d at 276 (internal citation and quotation omitted). "One of those 'procedural niceties' is the possibility of pursuing a class action ..." *Id.*

Consistent with the Seventh Circuit, the Central District of California has held that a district court cannot order arbitration to proceed on a class-wide basis unless the

arbitration clause contains a provision for class-wide resolution of claims. *See Gray v. Conseco, Inc.,* No. SACV000322, 2001 WL 1081347 *3 (C.D.Cal. Sept. 6, 2001). In *Gray I,* Judge Carter granted the defendants' motion to stay and to compel arbitration. *See Gray,* 2001 WL 1480273. In *Gray II,* Judge Carter denied the plaintiffs' motion for clarification of his earlier order so as to allow class-wide arbitration and held that the FAA only authorizes a district court to compel arbitration "in accordance with the terms of the agreement." *Gray II,* 2001 WL 1081347 at *2 (quoting 9 U.S.C. § 4); *see also Arriaga,* 163 F.Supp.2d at 1195 (rejecting the argument that an arbitration agreement is unconscionable because it denies plaintiff her ability to pursue class actions and vindicate small claims).

Here, as in *Champ* and *Gray II,* the parties' contract does not provide for class arbitration. For the reasons articulated above, the Court finds that the arbitration agreement's silence on arbitrability of class actions does not render the arbitration clause substantially unconscionable.

## 2. The Arbitration Agreement Does Not Lack Mutuality

■ Plaintiffs also argue that the arbitration provision is unconscionable because the terms of the provision are one-sided and lack mutuality. *See* Opp'n. at 18. Plaintiffs base their argument that the terms lack mutuality on the fact that (1) DirecTV demands that 'all' claims of the consumer be submitted to arbitration while DirecTV is not bound by the same requirement, (2) DirecTV gave itself several exceptions to the arbitration provision and (3) DirecTV will not be bound to arbitration because the majority of its claims against consumers, such as collection lawsuits for unpaid DirecTV services, are exempt from the arbitration provision under the AAA rules. Plaintiffs argue that DirecTV's claims would likely involve collection matters for amounts under $10,000, which would be filed in Small Claims Court and are exempt from the arbitration agreement under the American Arbitration Agreement Rules.[8]

First, the Court disagrees with Plaintiffs' interpretation that the arbitration agreement requires 'all' claims of the consumer be submitted to arbitration while DirecTV is not bound by the same requirement. Paragraph 8(a) of the Customer Agreement states "... neither of us may start a formal proceeding (except for Claims described in Section 8(d) below for at least 60 days after one of us notifies the other of a Claim in writing ...)." *See* Customer Agreement ¶ 8(a). Aside from the exceptions listed in paragraph 8(d), the requirement to forward all disputes to arbitration appears to apply equally to both plaintiffs and defendants. In addition, the exceptions listed in paragraph 8(d) are limited to disputes arising over the validity of either party's intellectual property rights or DirecTV's licenses to operate their business and disputes involving a violation of the Communications Act of 1934 or the Electronic Communications Privacy Act.

---

**8.** The Customer Agreement provides that the arbitration will be conducted under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). However, it is the AAA's policy that all disputes for less than $10,000 are to be resolved under the AAA Consumer Arbitration Rules. *See* Amicus Brief filed by AAA June 6, 2000, Request for Judicial Notice, Exh. B. Under the AAA Consumer Arbitration Rules, parties are not precluded from seeking relief in a Small Claims Court for disputes or claims within the scope of its jurisdiction. Plaintiffs contend that the jurisdiction of most Small Claims Courts should cover the typical amount of any collections action by DirecTV against a consumer (e.g., California's Small Claims Court jurisdiction is $5,000 maximum. Cal.Code of Civ.Proc. § 116.220(a)(1)).

Plaintiffs' argument that the arbitration clause does not apply equally to both parties because the FAA permits DirecTV's collection claims against customers to proceed in Small Claims Court does not persuade this Court that the arbitration agreement is so one-sided as to "shock the conscience." *See Arriaga*, 163 F.Supp.2d at 1195 (citing *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal.App.4th 1199, 78 Cal.Rptr.2d 533 (1998)). The Court agrees with Judge Carter that lack of mutuality arising from the fact that Defendants may go to court while Plaintiffs must arbitrate does not render the clause unconscionable. *See Gray I*, 2000 WL 1480273 at *4 (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 183 (3d Cir.1999)). Judge Carter further noted the reasons that had been advanced in support of this rule. First, under general principles of contract law, a non-mutual contract is valid and not unconscionable so long as there is some consideration on both sides. Second, a contrary rule would impose a special burden on agreements to arbitrate and therefore conflict with the federal policy favoring arbitration. *See Gray I*, 2000 WL 1480273 at *4.

The arbitration clause analyzed in *Gray I* is also similar to the clause at issue in this case. In *Gray I*, plaintiffs sued on behalf of a purported nationwide class of borrowers who obtained loans secured by residential property from Defendants. The promissory notes signed by plaintiffs contained an arbitration clause, which the Court found to be enforceable despite the fact that they were form contracts and plaintiffs were required to sign many papers at once. The court noted that the clause did not impose expenses above and beyond the cost of litigation upon Plaintiffs, because defendants had offered to pay the full costs of arbitration. *See id.* 2000 WL 1480273 at *4. Similarly, the arbitration clause in the Customer Agreement provides that DirecTV will pay the

"costs of the arbitration proceedings up to a maximum of one-half day . . ." and other costs in accordance with the AAA rules. *See* Customer Agreement § 8(b).

Another recent district court case found that an arbitration clause was not unconscionable even though it contained some elements of one-sidedness. In *Arriaga v. Cross Country Bank*, 163 F.Supp.2d 1189 (S.D.Cal.2001), the defendant bank sent plaintiffs an agreement including an arbitration clause along with the credit card for which they had applied. The *Arriaga* plaintiffs argued that the arbitration clause was unconscionable because it constituted a one-sided agreement in that it was in a "take it or leave it form, it was hidden in fine print and the full terms of arbitration were not disclosed." *Id.* at 1194. However, the Court held that the arbitration clause was not so one-sided as to render it unconscionable.

Plaintiffs argue that *Arriaga* is not dispositive on the instant matter because the arbitration clause present in that case required both sides to submit all of their claims to arbitration. *See* Pls' January 2002 Supp. Brief at 5. However, the *Arriaga* court also noted that arbitration may favor consumers in many cases and that the Supreme Court has recognized specific advantages that the arbitration forum affords plaintiffs. *See Arriaga* at 1195 citing *Allied–Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 280–281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (explaining that Congress had the needs of consumers in mind when drafting the FAA and that arbitration may favor individual consumers with small claims.) The *Arriaga* court also noted that many courts have upheld even non-mutual arbitration clauses against unconscionability defenses. *See Arriaga* at 1195, citing *Gray I*, 2000 WL at 1480273 *4–5; *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 183 (3rd Cir.1999).

Plaintiffs argue that the Court should find that the arbitration agreement was one-sided based on the holdings in the recent California cases *Armendariz v. Foundation Health Psychcare Svcs., Inc.,* 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000) and *Flores v. Transamerica Homefirst, Inc.,* 93 Cal.App.4th 846, 113 Cal.Rptr.2d 376 (2001), as well as the Ninth Circuit case *Ticknor, et al. v. Choice Hotels Int'l, Inc.,* 265 F.3d 931 (9th Cir. 2001).

The plaintiffs in *Armendariz,* who had brought wrongful termination claims against their former employers, contended that the mandatory employment arbitration agreement was unconscionably unilateral. The agreement required only employees to arbitrate their wrongful termination claims against the employer, but did not require the employer to arbitrate claims it may have had against any employees. *Id.* at 115–16, 99 Cal.Rptr.2d 745, 6 P.3d 669. The Supreme Court of California agreed with the plaintiffs and found that the arbitration agreement contained a damages limitation that was contrary to public policy and that it was unconscionably unilateral. *Id.* at 90, 99 Cal. Rptr.2d 745, 6 P.3d 669. The court further noted that the arbitration agreement did not contain even the required "modicum of bilaterality." *Id.* at 117, 99 Cal. Rptr.2d 745, 6 P.3d 669.

However, *Armendariz* is clearly distinguishable from the instant matter. Initially, the arbitration clause in the Customer Agreement does not generally require customers to arbitrate, while permitting DirecTV to litigate. More importantly, however, the holding in *Armendariz* relied heavily on the fact that the case involved preemployment arbitration contracts where the "economic pressure exerted by employers on all but the most sought-after employees may be particularly acute." *Id.* at 115, 99 Cal.Rptr.2d 745, 6 P.3d 669.

The Court further noted that the arbitration agreement, "stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." *Id.* While the arbitration agreement may stand between the customers and their receipt of services from DirecTV, any potential economic pressure exerted by DirecTV on its customers does not amount to that exerted by the employers in *Armendariz.*

*Flores* also involved a clearly unilateral contract, similar to that in *Armendariz.* The plaintiffs in *Flores* had executed a "Loan Agreement and Note," which contained an arbitration clause and a deed of trust in order to obtain a reverse mortgage on their home. The California Court of Appeal found that the arbitration provisions were unconscionably one-sided because while plaintiffs were required to arbitrate "any controversy" arising out of the loan agreement, the mortgagee was permitted to proceed by judicial or non-judicial foreclosure, by self-help remedies such as set-off and by injunctive relief to obtain appointment of receiver. In contrast, plaintiffs were not given any such right of set-off. *Id.* at 854, 113 Cal.Rptr.2d 376. While DirecTV may be able to pursue claims under $10,000 in Small Claims Court, this ability does not rise to the level of unilateral unconscionability present in the *Flores* agreement.

Recently, the Ninth Circuit, ruling in *Ticknor v. Choice Hotels Int'l, Inc.,* 265 F.3d at 941–42, found an arbitration provision to be unconscionably one-sided. While the Ninth Circuit applied Montana law in making this finding, Montana law regarding the unconscionability of arbitration agreements is similar to California law. At issue in *Ticknor* was an arbitration provision in Choice Hotels' Franchise Agreement, which provided,

Except for our claims against you for indemnification, actions for collection of moneys owed us under this Agreement, or actions seeking to enjoin you from using the Marks in violation of this Agreement, any controversy or claim relating to this Agreement ... will be sent to final and binding arbitration ...

*Ticknor*, 265 F.3d at 935.

The Ninth Circuit upheld the district court's finding that the arbitration agreement was unconscionable because it "required binding arbitration of the weaker bargaining party's claims, but allowed the stronger bargaining party the opportunity to seek judicial remedies to enforce contractual obligations." The court found that the "disparities in the rights of the contracting parties must not be so one-sided and unreasonably favorable to the drafter ... that the agreement becomes unconscionable and oppressive." *Ticknor*, 265 F.3d at 940.

Plaintiffs argue that "similar to the arbitration provision at issue in *Ticknor*, DirecTV has the choice of selecting a court as the forum instead of the AAA in the likely majority of cases, whereas its customers have no such option." *See* Pls' January 7, 2002 Supp. Brief at 5. However, the Court does not find that the arbitration clause in the Customer Agreement provides DirecTV with the same level of choice in forum selection as existed in the *Ticknor* arbitration agreement.

The Court finds that while the arbitration clause in the Customer Agreement may in fact contain certain unilateral effects, it is not unconscionably unilateral. The arbitration clause clearly meets the standard propounded by California courts, which establishes that an agreement is unconscionable "unless there is a modicum of bilaterality" in the arbitration remedy. *See Flores*, 93 Cal.App.4th at 854, 113 Cal. Rptr.2d 376.

## D. DirecTV has Not Waived its Right to Arbitrate because of Settlement in Braur Action

 Plaintiffs maintain that DirecTV waived its right to seek arbitration in this case—which involves allegations of Sherman, Clayton and Cartwright Act violations—because DirecTV settled *Brauer v. DirecTV Inc., et al.*, No. CV 00–03826, brought in the Central District of California. The plaintiff in *Brauer* alleged that DirecTV acted fraudulently when it signed up customers promising them that they could or would receive "network" programming when, in fact, federal law provided they could not. *See* Pls' March 2001 Supp. Brief at 2. In *Brauer*, DirecTV withdrew its motion to compel arbitration and agreed to a class-wide settlement. Plaintiffs further allege that the class members in *Brauer* involve the same class of individuals in the instant matter. *Id.* at 4.

 To establish waiver, plaintiffs must prove (1) DirecTV's knowledge of the right to compel arbitration, (2) acts inconsistent with that right, and (3) resulting prejudice to the party opposing the arbitration. *See Chappel v. Laboratory Corp.*, 232 F.3d 719, 724 (9th Cir.2000). In the Ninth Circuit, as elsewhere, "[w]aiver of a contractual right to arbitration is not favored" and "[a]ny examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir.1986) (internal citations omitted). Plaintiffs bear a "heavy burden of proof" in demonstrating that a defendant has waived its arbitration rights. *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 758 (9th Cir.1988); *Arriaga v. Cross Country Bank*, 163 F.Supp.2d 1189, 1200 (S.D.Cal.2001). Additionally, "any doubts concerning whether there has been

a waiver are resolved in favor of arbitration," regardless of whether the issue at hand is the construction of the contract language itself or an allegation of waiver, delay or another similar defense to arbitrability. *Arriaga,* 163 F.Supp.2d at 1200; *PPG Indus., Inc. v. Webster Auto Parts Inc.,* 128 F.3d 103, 107 (2d Cir.1997) (internal citation omitted).

Plaintiffs have established the first element of the three-pronged test used to determine whether a party has waived its right to compel arbitration under a contract. Clearly DirecTV knew that it had the right to compel arbitration as the Customer Agreement contained an arbitration provision and DirecTV had exercised its right to arbitration in other similar lawsuits. *See i.e., John Miller v. DirecTV,* No. W–00–CA–117 (W.D.Tex.2000).

However, Plaintiffs have failed to establish the remaining two prongs indicating whether a party has waived its right to compel arbitration. Plaintiffs argue that DirecTV's desire to waive its right to arbitrate in *Brauer* is an act that is "overwhelmingly inconsistent with the assertion of that same right in this case." *See* Pls' Supplemental Opp'n. dated March 30, 3001 at 4. Plaintiffs assert that the claims and parties in both *Brauer* and this case are similar enough to warrant a finding that DirecTV's failure to seek to compel arbitration in *Brauer* is inconsistent with DirecTV's actions in the instant action.

The Court, however, finds that DirecTV has not acted inconsistently with respect to the assertion of its right to arbitrate. First, as Guzik was never a member of the *Brauer* class, DirecTV did not assert an arbitration right against him nor settle a network programming-related claim with him in *Brauer.*[9] Second, Plaintiffs acknowledge that the claims in the two lawsuits are not identical. The only similarity that Plaintiffs refer to is the fact that the two suits arise from the same set of customer agreements. *See* Pls' March 2001 Supp.Opp'n. In addition, to hold that defendant can no longer assert its right to compel arbitration simply because it did not assert that right in another case is absurd. A finding that DirecTV has waived its right to arbitrate in this case because it agreed to a settlement in the *Brauer* case would amount to a rule that a party to millions of arbitration agreements has no choice but to arbitrate all claims arising from those agreements if even a single settlement has occurred in a case.

Finally, the Court finds that Plaintiffs have not suffered any prejudice as a result of DirecTV's failure to compel arbitration in the *Brauer* case. As was stated in *Arriaga,* the "prejudice that a party must suffer from arbitration itself is not enough to satisfy the Fisher analysis." *Arriaga,* at 1201. Plaintiffs must show that their prejudice results from the inconsistent acts of the defendants. Plaintiffs have not made any such showing.

Therefore, the Court rejects Plaintiffs' contention that DirecTV has waived its right to compel arbitration because it did not act consistently with that right, and because its decision to settle the *Brauer* case does not prejudice Plaintiffs.

### E. DirecTV is Not Estopped from Pursuing its Arbitration Clause

Plaintiffs further argue that DirecTV's actions in the *Brauer* case should

---

9. Indeed, when plaintiffs Guzik and Bischoff attempted to raise objections to that settlement, Judge Lew, who presided over *Brauer,* struck their pleadings on the ground that, as non-class members, they lacked standing to object and their individual rights would not be affected by the settlement. *See* Defendant's Supplemental Brief dated April 13, 2001.

estop DirecTV from enforcing its arbitration clause.

 While "[t]he precise law of judicial estoppel is unclear in the Ninth Circuit," *Yanez v. United States*, 989 F.2d 323, 326 (9th Cir.1993), it is clear that the purpose of the doctrine is to "protect the integrity of the judicial process." *Morris v. California*, 966 F.2d 448, 453 (9th Cir.1991).

Aside from the fact that Plaintiffs have failed to provide the Court with any examples of a party being estopped from enforcing its arbitration rights in one case because the party decided to settle a second factually and legally dissimilar case, the Court finds that estopping DirecTV from enforcing its arbitration clause will not serve to protect the integrity of the judicial process.

### F. The Stay Applies to All Parties and Claims

 DirecTV moves for a stay of the entire case, including Plaintiff Bischoff's claims against DirecTV and all claims against the retail defendants. *See* Motion at 13. While all of these parties are not signatories to the Customer Agreement, a stay of all issues, and as to all parties, is warranted when questions of fact common to all would be involved in both the litigation and the arbitration. *See e.g. United States v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir.1985) (staying all proceedings in case, including non-arbitrable third party complaint, pending arbitration for reasons of "economy and efficiency"); *Lake Communications, Inc. v. ICC Corp.*, 738 F.2d 1473, 1477 (9th Cir. 1984), *overruled on other grounds Nghiem*, 25 F.3d at 1441 (9th Cir.1994) (noting that it proper for district court to stay non-arbitrable counterclaims in light of their "interdependence with claims properly referred to arbitration"); *Gray I*, 2000 WL

1480273 at *8 ("in its discretion, the Court may either stay the non-arbitrable claim or allow it to proceed in court while the arbitrable claims are arbitrated ... The district court's power is the same whether the non-arbitrable claims arise between parties with other arbitrable claims or instead are brought by parties with no arbitrable claims.")

Defendants argue that the Court should stay the entire action because Plaintiffs allege the same legal claims against the remaining defendants as they do against DirecTV. Defendants also contend that because the questions of fact involved in an arbitration between DirecTV and Guzik will be identical to the questions of fact involved in this litigation among all parties, the entire action should be stayed.

Plaintiffs argue that the entire action should not be stayed because many of the plaintiffs are not subject to the arbitration provision.[10] A stay of the entire action, Plaintiffs contend, will not promote judicial efficiency because the arbitration between Guzik and DirecTV will be private, "with no record and no precedential value," and the results of the arbitration, "will not be binding in any way on DirecTV, Bischoff, or the other class members in this action." *See* Pls' January 2002 Supp. Brief at 10. The Court acknowledges that while the results of the arbitration will not be binding on DirecTV, Bischoff or the other class members, a failure to stay the action may lead to inconsistent findings which will hinder the pursuit of judicial efficiency. *See Contracting Northwest, Inc. v. City of Fredericksburg, Iowa*, 713 F.2d 382 (8th Cir.1983) (upholding the stay of an action and noting that "[w]hile it is true that the arbitrator's findings will not be binding as to those not parties to the arbitration, considerations of judicial economy and avoidance of confusion and possible incon-

---

**10.** The fact that the issues are the same is relatively uncontested by the parties.

sistent results nonetheless militate in favor of staying the entire action.") *Id.* at 386 (citing *American Home Assurance Co. v. Vecco Concrete Construction Co.,* 629 F.2d 961 (4th Cir.1980)).

Plaintiffs have also argued that the Court should not be persuaded by the Ninth Circuit cases upon which Defendants rely for the argument that the entire case should be stayed because those cases do not order a stay of "the claims of another *plaintiff* not subject to an arbitration agreement." *See* Pls' January 2002 Supp. Brief at 9. Indeed, *Neumann,* 750 F.2d at 1427 (9th Cir.1985) involved the staying of claims the plaintiff had against *another defendant* and *Lake Communications,* 738 F.2d at 1477, involved the staying of *counterclaims.* Plaintiffs also cite a number of district court cases where a motion to stay an entire action was not granted, including *Cargill Ferrous Int'l, et al. v. The M/V Anatoli, in rem, et al.,* 935 F.Supp. 833 (E.D.La.1996); and *Hikers Industries, Inc. v. William Stuart Indus. (Far East) Ltd.,* 640 F.Supp. 175 (S.D.N.Y. 1986).

The cases cited by Plaintiffs do indeed indicate that a stay of litigation is not always appropriate when all parties to a litigation are not bound by an arbitration agreement. However, the similarity of the issues of law and fact in this case to those that will be considered during arbitration, as well as the potential for inconsistent findings absent a stay, persuade the Court that a stay is warranted in the instant matter.

The Court also notes that Plaintiffs have incorrectly cited the holding in *Hikers Indus. v. William Stuart Indus. (Far East) Ltd.,* 640 F.Supp. 175, 177 (S.D.N.Y.1986). Plaintiffs state that the *Hikers* court held that a stay of an action against a party not subject to arbitration agreement could not be sustained under 9 U.S.C. § 3 because of the nonidentity of the parties in the arbi-

tration and lawsuit. However, the court stayed the pending litigation relying on "the power to stay proceedings ... incidental to the power inherent in every court to control the disposition of the cases on its docket, with economy of time and effort for itself, for counsel, and for litigants." *Hikers,* 640 F.Supp. at 177 (citing *Landis v. American Water Works & Electric Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). The court listed a number of the reasons for staying the action, including, (1) the fact that the decision of the arbitrators would be helpful in deciding the issues in the case before the court and (2) the fact that any decisions by the court on the merits of the claims of the party not subject to arbitration would thwart federal policy in favor of arbitration of disputes by rendering the arbitrator's findings on the agreement between the arbitrating parties meaningless. *See Hikers,* 640 F.Supp. at 178–79. To ensure that the parties were not prejudiced by an unreasonable delay in the arbitration, the court provided that the stay would be lifted if arbitration was not completed within six months.

Having found that judicial economy and the desirability of avoiding possible inconsistent findings militate in favor of a stay, the Court grants DirecTV's request for a stay of the instant action. To ensure that the parties are not prejudiced by an unreasonable delay in the arbitration, the Court ORDERS that DirecTV shall initiate arbitration proceedings within thirty (30) days from entry of this order and shall file a written report regarding the progress of the arbitration every sixty (60) days thereafter.

## IV. Conclusion

Pursuant to 9 U.S.C. § 4, the Court hereby ORDERS DirecTV and Guzik to proceed to arbitration in accordance with the Customer Agreement.

Pursuant to 9 U.S.C. § 3, the Court STAYS the action until conclusion of the arbitration proceeding. The Court ORDERS DirecTV to initiate arbitration proceedings within thirty (30) days from entry of this order and to file a written report regarding the progress of the arbitration every sixty (60) days thereafter.

SO ORDERED.